The Mount Olive and Staunton Coal Company, Plaintiff in Error, *vs.* The Industrial Commission *et al.*—(John Ruhl, Defendant in Error.)

*Opinion filed April 23, 1926.*

1. Workmen's compensation—*what necessary to justify an award for permanent total disability—burden of proof.* An award for permanent total disability cannot rest on conjecture or surmise but the proof must be sufficient to support the legitimate conclusion that the employee is rendered wholly and permanently incapable of work as a result of the injury complained of, and the burden is upon the applicant to establish this by competent evidence.

2. Same—*when finding of Industrial Commission is not justified by evidence.* The Industrial Commission is not justified in finding for one party because there is some evidence in the record which, if it stood undisputed, would justify the finding, where such evidence is contradicted by credible testimony and leaves the whole evidence preponderating in favor of the other party.

Writ of Error to the Circuit Court of Madison county; the Hon. J. F. Gillham, Judge, presiding.

Williamson, Burroughs & Simpson, (R. H. Davis, of counsel,) for plaintiff in error.

W. J. MacDonald, (A. W. Kerr, of counsel,) for defendant in error.

Mr. Justice Farmer delivered the opinion of the court:

The application in this case was filed with the Industrial Commission on October 6, 1923, by John Ruhl, claiming additional compensation for temporary total and partial disability caused by an accidental injury alleged to have been received on January 9, 1923, while working as a digger in the coal mine of the Mount Olive and Staunton Coal Company, at Staunton, Illinois. The cause was heard by an arbitrator on November 22, 1923, who found that applicant suffered accidental injuries on January 9, 1923; that first

aid, medical and hospital services had been furnished in part; that he was entitled to $15 per week for 30 weeks,— the period of temporary total incapacity for which compensation was payable; that his present condition was not due to injury sustained by him on January 9, the effect of which ceased within said period; that the sum of $364 had been paid; that applicant was entitled to $86, balance in full compensation, and the sum of $24.62 for additional medical services. Upon petition of the applicant stating the award was inadequate the cause was reviewed by the Industrial Commission, before whom further evidence was presented on September 17, 1924. The commission found that as a result of the accident Ruhl was rendered wholly and permanently incapacitated for work and awarded compensation in amount of $4000, payable $15 per week for 266⅔ weeks, and thereafter $26.67 per month pension for life. The cause was removed by *certiorari* to the circuit court of Madison county, where the award of the Industrial Commission was approved and confirmed. A writ of error was allowed on the petition of the coal company to this court for a review of the record.

We are met at the threshold of this case with confusion in the record and dispute as to when the accidental injury occurred as well as its severity. The application stated the employee was injured by reason of an accident arising out of and in the course of his employment as a digger in the mine of plaintiff in error on January 9, 1923. The claim made was not for total disability, and the application does not state the nature of the injury or how it was received. There appear in the record two exhibits of plaintiff in error made out by B. H. Tate, showing applicant's report of accidental injury. One, dated October 11, 1922, states "John Ruhl, a loader, was injured September 28, 1922, reporting to office September 30, 1922, that prop fell on right hip in room and entry, but remained at work. Was treated by Dr. P. J. Wolf, Staunton, Illinois, extent of injury being

sprained hip joint, but no time lost." The other report, dated February 15, 1923, shows "John Ruhl was a loader and injured February 10, about 11 A. M., reporting at office. Says he was lifting a heavy piece of slate and sprained right hip; that he was injured September 28, 1922, caused by prop falling on right hip, and says it did not get strong." The testimony of the chief clerk of the coal company was, that as a result of the accident reported February 10 compensation was paid in amount of $34 from February 17 to March 4, 1923, and a receipt in full taken from Ruhl; applicant worked in plaintiff in error's mine thereafter from March 5 to April 3, 1923; compensation was resumed and paid from April 3 to September 3, making total payments of $364; no report was ever made of an accident on January 9, 1923. The applicant testified before the arbitrator that while he was working in the mine a timber or prop about six feet long and five inches in diameter, with an awful weight on it, came down and hit him in the small of the back, knocking him down; that it happened between ten and eleven o'clock in the morning; that he laid down on a coal box and went home and to Dr. Wolf; that he continued to work off and on for a half or three-quarters of a day but could not work full days. During his examination, by a question propounded, reference is made to a later date when pain was caused to applicant by lifting a large chunk of coal in the mine, but no date is mentioned. Dr. Wolf, who at the time was the coal company's doctor, testified in behalf of applicant before the arbitrator that he treated applicant for a mine injury about January 9, 1923, and saw him several times during January and several times before January; that he had no record of the times or of what he found the first time he treated Ruhl but that the real injury was February 10, 1923. Dr. Zoller, a witness for the coal company, testified before the arbitrator that when he first examined Ruhl on April 24, 1923, he said a prop had hit him in the back while working; that he con-

tinued to work the rest of the day and then went to a doctor's office that evening, and thereafter continued to work till February 10, when he lifted a large chunk of slate and had a severe pain in his back and was taken home; that he tried to work for three days but had to quit on account of pain and had not worked since. Before the commission, and on cross-examination, Ruhl testified that he did not know exactly when he was hurt, but it was around January 9, 1923; that right then he stopped working; that he reported the injury to the mine office the same day. He stated he was not hit in the back with a prop on September 28, 1922, and repeatedly stated during his examination that he was hit only once with a prop, and that was about January 9. He said he sprained his back or right hip February 10, 1923, when lifting a heavy piece of slate in the mine, and that was two or three weeks after the prop hit him; that he reported this to Tate, and also reported the prop on the same date. He further testified, when a portion of the report of Tate was read concerning the injury of February 10, that he stated to Tate at that time that he (Ruhl) was injured September 28, 1922, by a prop falling on his right hip and that it did not get strong. When again asked if he was hurt by a prop on September 28, 1922, he replied that he did not know exactly when it was. He said he made no claim for compensation for that. "I didn't claim; they give it to me; I didn't ask for nothing; they put a sign on the mine."

At the time of the hearing before the arbitrator that officer dictated into the record on behalf of the parties a stipulation concerning certain jurisdictional facts, in which was the statement that the date of the injury was January 9, 1923, and the only issue involved was "additional medical, and the amount of compensation due or to become due, if any." Counsel for plaintiff in error contend this stipulation was based entirely upon the written application filed claiming compensation and was inadvertently made.

The record seems to warrant that statement, as it appears shortly after the beginning of the hearing that counsel for the coal company stated there was a dispute as to when the accident occurred, and maintained the injury happened on February 10, 1923. No other evidence appears in the record as to what date or in what manner the accident happened, except as has been heretofore mentioned. The stipulation referred to was not withdrawn nor was it corrected, and the finding of the arbitrator and the commission was that the accident occurred on January 9. The record is so confused and such contradictions appear in applicant's testimony as to make it almost impossible to ascertain the date when the real injury was received. Notwithstanding the unsatisfactory and indefinite state of the record, we feel obliged to treat the case in accordance with the finding of the arbitrator and commission as to the date of the injury.

We have previously set forth as to how the injury was claimed to have been received. At that time claimant was fifty-six years of age and had one child under sixteen years. As we understand the testimony, after the injury in January he reported to Dr. Wolf, the mine company's doctor at the time, though no report of the treatment or injury was made by the doctor, and plaintiff in error claims no report of the accident was made by the injured employee. Thereafter claimant worked off and on in the mine for a half or three-quarters of a day, but not full days, till February 10, 1923, on which date he was again injured in the back or right hip by lifting a heavy piece of slate in the mine. The report of this injury appears in the record and has been previously referred to herein. As to whether his two minor sons, or either of them, were working with him at this time, or in January, is vague and uncertain. If either was present at any time of injury mentioned he did not testify in the case. Claimant was incapacitated after February 10 and until March 4, for which period he received compensation. From March 4 to April 3 compensation ceased and

he received pay for work done in the mine. He testified he could not do any work but went down in the mine with his two minor sons, who were not permitted to work without his presence, and they loaded coal on his check; that the older boy loaded on his own check and the younger son loaded on the father's check. About April 3, 1923, claimant quit work on account of pain in the lumbar region. After February 10, 1923, he was treated by Dr. Wolf, and during the latter part of April was sent to a hospital in Litchfield, where he was under the care of Dr. Zoller for five or six weeks, and after that time had further treatment from Dr. Zoller and Dr. Sihler. Before the arbitrator, in November, 1923, claimant testified he was a healthy man and had no pain or trouble before the injury; that he had not worked since and was unable to do anything; that he had pain in his back, could put no weight on his hips, and felt weak; that he was being treated at the time by Dr. Wolf. On review during September, 1924, claimant testified his ability to work or get around was getting worse; that he had to walk with a cane and crutch; that his trouble was in the lumbar vertebræ, and the pain was so bad sometimes he could not see. The testimony of claimant, Dr. Wolf and Dr. Zoller, with certain exhibits of blood and other tests, was all the evidence presented before the arbitrator. All of the medical testimony as to examinations, whether physical or X-ray, except one statement by Dr. Wolf, refers to the condition of the patient after February 10, 1923.

Dr. Wolf testified on behalf of claimant, before the arbitrator, that he examined Ruhl for a mine injury on or about January 9 and saw him several times during January but had no record of what he found the first time he treated him. The doctor stated the real injury was February 10, and claimant came to his office complaining of pain in the back and was treated therefor until April 24. The witness made a physical and X-ray examination. The physical

examination showed a limitation in both legs, rigidity of muscles in the back and a tender spot on the right side, over the sacro-iliac joint. Several X-ray pictures were taken which did not show up well, but one finally showed a lipping of the fourth and fifth lumbar vertebræ, which is the cause of the condition of the back. The condition is known as osteo-chondrosis, and can be accounted for by an injury such as Ruhl received. That condition will cause pain and disability and will always stay that way. Claimant will not be able to do manual labor or heavy work. The doctor found no other systemic cause which would account for Ruhl's physical condition. The various blood and urine tests were about normal. On cross-examination the doctor stated that he was the company's physician at the time he first examined Ruhl, and that in his report of such examination he stated Ruhl was suffering from a sprained back. His report showed that an X-ray had been taken of the hip but that it showed nothing wrong with the bone structure; also that claimant had an X-ray taken in St. Louis and was told he had a fracture, but witness could not interpret a fracture from that picture.

Dr. Zoller testified before the arbitrator in behalf of plaintiff in error that he first examined Ruhl at his office on April 24, 1923, and that he was placed in a hospital at Litchfield, under the doctor's care. Claimant complained of pain in his back and right thigh, and he had a marked muscle spasm of the muscles on the right side of the back. X-ray plates which had been previously taken at the hospital showed some apparent disturbance near the fourth and fifth lumbar vertebræ. It looked as though he was suffering from osteo-arthritis. The doctor treated him for some time and told him that his tonsils were very bad, that focal infection was causing his trouble in the back, and that he should have his tonsils removed, but claimant did not want to have that done. He was later examined on November 13, 1923, and some X-ray plates made of his back. These

plates showed a lipping or thickening of the second, third and fourth vertebræ. The condition shown from the examination was osteo-arthritis and was due to some septic form of focal infection. The doctor saw nothing that would indicate a fracture. He further testified, on review, that he had examined claimant again on September 13, 1924; that claimant said he was in a very much worse condition; that he had been unable to work and had been under Dr. Sihler's care up to that time; that he was unable to rest at night, had pain in the back of his head and in the small of his back. The doctor examined him and stated that he moved around with a great deal of difficulty, the muscles of his back and thighs being kept under tension at all times. He had lost about thirty pounds in weight. His throat was congested and pus was expressed from the right tonsil. He had a marked arterial sclerosis, his face was florid, his eyes congested, and there were fatty tumors in the superficial fat covering his abdomen. No X-ray examination was made at this time, but the doctor examined some other X-ray plates recently taken. The X-ray plates taken by Dr. Young were examined by the witness, and he stated that none of those pictures showed any fracture of the lumbar vertebræ or any portion of the spine. The X-ray plates did show a lipping, by which is meant deposits appear around the edges of the bones at the joint. That process is usually caused from infection rather than from injury. An injury might cause lipping, but in that event the lipping would be local at the point of injury. The lipping in this case is general. The doctor stated that when he first examined claimant, in April, 1923, he found no clinical symptoms of injury in the back, and from all of his examinations he was of opinion the conditions existing were not the result of any injury received in January, 1923. The condition is one of osteo-arthritis and is due to some plastic materials that claimant is absorbing. The doctor further testified that had there been a crushing fracture of

320—40

one or more of the vertebræ of the spine it would not be reasonably possible for Ruhl to have continued manual labor in the mine immediately thereafter for four or five weeks.

Dr. Young testified in behalf of claimant, on review, that he had specialized in X-ray work for about fourteen years. He had made an X-ray examination of the lumbar spine and upper portion of the pelvis of Ruhl on June 9, 1924. He had seen twelve X-rays of Ruhl's spine and had taken six of them. Four of the plates taken by the witness were good plates and showed a crushing fracture on the right side of the second and third vertebræ; also there appeared to be a fracture of the fifth lumbar vertebra. The doctor stated that there was no possibility of mistake as to the fractures shown by the plates. He did not know whether the deformity was permanent, as that was a difficult question to answer. He further testified that there was also an osteo-arthritic process going on in claimant's back.

Dr. Sihler testified for claimant, on review, that he had had a great deal of experience in industrial injury cases and had examined and treated Ruhl. He first examined him January 3, 1924. The doctor looked over the X-ray plates taken in April, 1923, and found an osteo-arthritis going on in the lower lumbar vertebræ. He examined the plates made by Dr. Young but could not make out any fracture in the vertebræ. The plates did show a marked overlapping and lipping of the edges of the bones. That condition would account for a great deal of the pain. Claimant had a high blood pressure and an arterial sclerotic condition of the blood vessels, which might account for a great deal of head pain. Considering the history of the injury, osteoarthritis may just come on. Such a condition is often taken as one of the signs and symptoms of an old man's spine, but it could be possibly aggravated by injury or infection. The doctor testified it was hard to form an opinion in this case. There was an increased progressive condition, and the witness could not see a definite source that he would ab-

solutely say was the cause of it. He examined Ruhl's tonsils and saw no reason for an operation on them. Neither did he find any source of infection in the teeth, nasal cavities or any place in the body. He made two definite examinations of claimant and suggested treatment to him for some time. The condition of claimant at the time the doctor testified was one of osteo-arthritis, and ordinarily that is a result of infection and not injury. The doctor said that assuming there was a fracture of the spine as described by Dr. Young, such injury would account for Ruhl's condition, which in his judgment would be permanent. He further stated that in his judgment a man whose spine or back was injured or fractured as described by Dr. Young could not do manual labor in a mine for five or six weeks after such an injury.

Dr. Bain testified for plaintiff in error, on review, that he made an examination of Ruhl on July 22, 1924. Claimant complained of headache, pain in his back and in the region of the lumbar vertebræ. He gave a history of the alleged accident to the doctor. The doctor made an examination of claimant's back to see if he had any limitation of motion, and found that he could make any motions that anyone else could, although he complained of pain in doing so. Various tests were made by the doctor and a number of X-ray pictures taken, including pictures of the chest and pelvic regions and also lower part of the spine. The examination showed a diseased condition of the chest and some lipping of the vertebræ,—rather more on the second and third lumbar. There was no evidence of torn or lacerated ligaments. The lipping was general, which would indicate that it was from some cause other than trauma. A general lipping usually indicates some toxic poisoning. The doctor was unable to find any evidence of fracture of any of the lumbar vertebræ or in the lumbar region. He testified he examined the X-ray plates made by Dr. Young and that there was no evidence of fracture shown by those

plates. The doctor was of opinion that it would hardly be possible for one to go back to work immediately after receiving a crushing fracture of the vertebræ of the spine. He further testified that Ruhl had no organic lesion by which the witness could account for his disability, but that he was of opinion his condition was due to toxemia from which he was suffering, and was not caused by any injury received in January, 1923.

Dr. Short testified for plaintiff in error, on review, that he examined Ruhl on September 15, 1924. His examination was confined to the ears, nose and throat. Ruhl gave a history of his symptoms and disturbances; that he was injured in January, 1923, and was unable to walk without crutches; that pains ran up his spine to his head; that he had spots before his eyes and was unable to read. The witness stated that the tonsils of Ruhl were twice the normal size, with large follicles, from which pus was expelled with pressure on the tonsils. He was of the opinion that the diseased condition of the tonsils was sufficient to cause the things which claimant said caused him pain and disability.

The disabled condition of claimant was based upon an injury received on January 9, 1923, by a mine prop hitting him on the back, near the lower end of the spine. There is no testimony in the record except that of claimant describing how the injury happened, and no evidence of there being any bruise, swelling or inflammation caused immediately thereafter. Dr. Wolf stated he saw claimant on that date and several times during January, but testified to no outward appearances of trauma. Evidently he thought this alleged injury of little consequence, as he made no record of what he found, and further stated that the real injury was February 10. Claimant himself testified that after January 9 he worked off and on in the mine for half and three-quarter days for at least four weeks. It further appears that no time was lost by him prior to February 10, and all medical and hospital treatment was received after that date.

If the disability complained of was caused by an injury on January 9, the award by the commission must have been based upon the claimant having a fractured spine, and that conclusion could only be predicated upon the testimony of Dr. Young, who took several X-ray pictures of the spine and had examined several other pictures. He was positive in his opinion that there were fractures shown of the second, third and fifth lumbar vertebræ. No other doctor agreed with Dr. Young, either from X-ray plates made by him or by other doctors. Dr. Wolf, who testified for claimant, stated he could find nothing wrong with the bone structure and could not interpret any fracture from any X-ray pictures he had seen. Dr. Sihler, testifying for claimant, said he could locate no fracture from any of the X-ray plates, including those made by Dr. Young. He further stated that claimant's disabled condition was an increasingly progressive one, but he could not see a definite source or cause for it. He and two doctors for plaintiff in error were of opinion that if there were fractures, claimed to have been caused by the injury, claimant could not have worked for four weeks immediately thereafter. There was testimony on both sides admitting there was an osteo-arthritic condition and a lipping of the vertebræ existing in the lumbar region of claimant's spine, which, as a usual thing, is caused from infection and not from trauma. The medical witnesses for plaintiff in error stated that the lipping was general and not local, showing the condition was not caused by injury. At least two of these witnesses stated complainant's condition was not caused from any injury received.

The award made by the commission was for permanent total disability and a pension was given for life. Such an award is justified only in case the employee is rendered wholly and permanently incapable of work as a result of the injury complained of, and the burden is upon the applicant to establish this by competent evidence. The proof to warrant such an award should be sufficient and of such

character as to support the legitimate conclusion that the accidental injury produced total and permanent disability. The award must be based on facts proved and cannot rest upon conjecture or surmise. (*Perry County Coal Corp.* v. *Industrial Com.* 305 Ill. 513; *Benton Coal Co.* v. *Industrial Com.* 301 id. 396.) The Industrial Commission is not justified in finding for one party because there is some evidence in the record which, if it stood undisputed, would justify the finding, where the evidence is contradicted by credible testimony and leaves the whole evidence preponderating in favor of the other party. *Hafer Washed Coal Co.* v. *Industrial Com.* 293 Ill. 425; *Inland Rubber Co.* v. *Industrial Com.* 309 id. 43.

The award is not sustained by a preponderance of the evidence.

The judgment of the circuit court is reversed and the cause remanded to that court, with directions to set aside the award and remand the case to the Industrial Commission for a further hearing upon any competent testimony which either party may see fit to offer.

*Reversed and remanded, with directions.*