THE CONSOLIDATED COAL COMPANY OF ST. LOUIS, Plaintiff in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*— (CHARLES RUBINELLI, Defendant in Error.)

*Opinion filed October 28, 1926.*

1. WORKMEN'S COMPENSATION—*an application need not state all elements of cause of action.* While an application for the adjustment of a claim for compensation is in the nature of a pleading and should be consistent with the findings of the Industrial Commission in making the award, it is not a formal pleading and need not state all the elements of a cause of action, as is required in a declaration in an action at law.

2. SAME—*when application for compensation is sufficient—evidence.* An application for compensation is sufficient if it states the nature of the accident and the character of the injury to such an extent that it fairly advises the employer of the nature of the claim and enables him to ascertain the facts and to prepare his defense, and while the burden of proof is on the claimant and the common law rules of evidence must be observed, the evidence may extend to a full development of the facts concerning the accident and the nature and extent of the injury alleged.

3. SAME—*application need not state amount claimed for each kind of disability.* Where an application for compensation is upon a form provided by the Industrial Commission, and the sums demanded weekly for temporary total disability, for partial disability and for loss of use of a member are specified but no amount is inserted in the space provided for complete and permanent disability, the application is sufficient to allow the introduction of evidence showing the actual disability caused by the accident, whether or not a specified sum is claimed for the disability shown.

4. SAME—*what necessary to justify an award for complete and permanent disability—burden of proof.* An award for complete and permanent disability is justified only in case the employee is rendered wholly and permanently incapable of work as a result of the injury of which complaint is made, and the burden is on the applicant to establish that fact by evidence sufficient to warrant the legitimate conclusion that it exists.

WRIT OF ERROR to the Circuit Court of Williamson county; the Hon. D. T. HARTWELL, Judge, presiding.

EDGAR P. HOLLY, (WHITNEL & BROWNING, of counsel,) for plaintiff in error.

A. W. KERR, and GEORGE R. STONE, for defendant in error.

Mr. JUSTICE DEYOUNG delivered the opinion of the court:

Charles Rubinelli filed with the Industrial Commission an application for compensation in which he alleged that on May 14, 1923, while employed by the Consolidated Coal Company as a machine loader, he was injured by top slate falling upon him and "mashing him through hips, back and head." He claimed $16 per week for unknown weeks' temporary total disability, a like sum per week for unknown weeks' partial disability, and a like sum weekly for unknown weeks' loss or loss of use of legs, under paragraph (e) of section 8 of the Workmen's Compensation act. The sum claimed per week for complete and permanent disability was not filled out. It was stipulated before the arbitrator that the parties were on May 14, 1923, operating under the provisions of the Workmen's Compensation act; that Rubinelli received an accidental injury which arose out of and in the course of his employment; that notice of the accident was given and demand for compensation made within the time prescribed by the act; that Rubinelli's earnings for the year preceding the accident were $1890 and his weekly wage $36.34; that he had two children under sixteen years of age at the time of the injury; that first aid and medical services had been furnished by the respondent and that $144 in compensation had been paid. The application was amended, on the hearing, to read that Rubinelli was injured by being rolled between a motor and a prop of the mine. On September 3, 1924, the arbitrator awarded Rubinelli $16 per week for 250 weeks and thereafter a pension of $26.66 per month for life, for the

reason that the injury sustained caused complete disability and rendered Rubinelli wholly and permanently incapable of work. No additional evidence was offered by either party before the commission and the award of the arbitrator was sustained. On review by writ of *certiorari* the circuit court of Williamson county confirmed the decision of the commission. On the petition of the coal company this court awarded a writ of error, and the record is here for review.

Rubinelli testified that he was forty-nine years of age; that on the day in question he was loading coal from a machine when he was caught between the motor, weighing several hundred pounds, and a prop of the mine, and that he was rolled between the two, the pressure being upon his hips and back; that he fell, and his brother and the motorman assisted him to a sitting position, in which he remained for twenty or thirty minutes, after which he was taken out on the motor to the top of the mine; that he went home and was confined to bed for ten or eleven days and that he received medical treatment until the end of July; that before he was injured he worked every day the mine was operated but that because of the pain in his back and shoulders he was unable to do so since; that the pain in his back was constant; that he could not rest and slept but little at night, and that he was not improving in physical condition but was losing weight. He added that he had been struck on the arm and head by falling coal in 1919 or 1920 but that he had recovered from that injury. On cross-examination he admitted that he had not tried to carry buckets of water or coal or to spade or hoe but had occasionally moved things, such as a chair, about the house.

Dr. L. H. Green, called by the applicant, had treated industrial accidents for fourteen years. He made a physical and X-ray examination of Rubinelli on August 29, 1924, and testified that upon pressure of the lumbar-sacral region he had considerable pain; that the muscles were tense in

all motions and in sitting, and that on different exercises, such as hopping, Rubinelli experienced considerable spasm of the leg muscles. The X-ray picture was of the back, legs and pelvis, and covered part of the second and all of the third, fourth and fifth lumbar vertebræ. It showed, the doctor testified, that the crest of the ilium on the right side was considerably roughened and that there were spur formations on the lower part of the third and fourth vertebræ; that on the third vertebra there was considerable enlargement; that the left superior sacro-iliac showed some ossification and that the cartilage was about gone. The doctor's opinion was that the applicant had arthritis of the back as well as a portion of the sacro-iliac joint; that an arthritic condition would be made worse by a sprain or trauma; that a severe injury could cause the condition he found, which he deemed to be permanent, and that he did not think the applicant was able to do manual labor, such as lifting or bending.

Dr. I. T. Roberts, on behalf of the plaintiff in error, testified that he had treated approximately six thousand mine injury cases; that he was called by the plaintiff in error on the day of the accident and went to the applicant's home, and when he reached there the applicant was in bed, complaining of the posterior portion of the pelvis and the posterior right chest, over which regions there were abrasions and contusions; that the abrasions were not, while the contusions were rather, severe; that he visited the patient about twenty times prior to July 24, 1923; that on his first visit he applied adhesive dressings to the applicant's back and chest; that on May 17, three days after the injury, the applicant walked out of doors with a cane and on May 21 came to the doctor's office, and the latter made an X-ray picture which showed the entire pelvis, the upper third of the femur and the fifth and practically all of the fourth lumbar vertebræ; that the picture revealed no injury to the bony portion of the body but showed an osteo-

322—33

arthritic condition of the spine, a beginning to lip on the right side of the fourth lumbar vertebra, and calcium deposits between the articulating processes of the fourth and fifth vertebræ on the left side; that such a condition comes on slowly, was probably not less than two years old and could not develop within a few days, and that where one sustains an injury such a condition might render the pain resulting from the injury more acute and protract the period of convalescence. Dr. Roberts further testified that on June 9 the applicant made no complaint of loss of sleep or appetite or other unusual condition; that there was no particular muscle spasm and the motion of the back was better; that on June 13 the applicant walked with a cane and later visited the doctor's office, approximately two miles from his home, about ten times; that the office was on the second floor and the applicant climbed the stairs; that on July 24, 1923, another X-ray picture was made covering practically all of the lumbar vertebræ and the upper portion of the pelvis; that so far as the two pictures showed the same region no change of condition was disclosed by the later one, but parts shown in the second picture, not included in the first, gave evidence of an osteo-arthritis with calcium deposits and a tendency to lipping of the lower vertebræ, and that the lipping could not have been caused by the injury on the 14th of May. Rubinelli was also examined by Dr. Roberts on November 1, 1923, and June 12, 1924. The doctor testified that during his treatment he had the applicant bend and stoop, and while the motion in the back was very poor at the beginning it gradually improved, and when he was released for work on July 30, 1923, the motion was very good; that during the same period the applicant said he slept well and that his appetite was good; that at the time of his physical examination on the first of November the applicant complained of constant pain in the back and that the pain was intensified by active exercise; that the applicant's general appearance and color at that time

were good, and the doctor found no abnormal conditions except that the epitrochlear and axillary glands were enlarged, his teeth were fragmentary and infected, and he had pyorrhea, with recession of the gums; that there was a scar in the right inguinal region, the result of herniotomy in 1898; that there were some small varicosities posterior to cither knee, more pronounced on the right than on the left side, as well as varicose veins on the surface of both feet, and that there was some muscle spasm from the first lumbar vertebra to the center of the sacrum; that when the examination of November 1, 1923, was made there was no evidence of hip-joint arthritis or sciatica or of traumatic trouble, and that the applicant had then fully recovered from the injury sustained on May 14. The doctor further testified that he considered the muscle spasm found on his first examination due to the injury but that the later spasms were owing to the osteo-arthritic back,—an inflammatory condition involving bone and joint, caused by infection and progressive in character; that in his opinion, based upon his examinations, treatment and X-ray findings, the applicant was not suffering in any degree from the injury sustained on May 14, 1923, but that his trouble was due to osteo-arthritis in the back and infection from the teeth; that the arthritic condition resulted from infection prior to the injury, and that the injury might have affected the condition of the back temporarily and prolonged the healing period but its effect was not permanent. The doctor stated on cross-examination that while there was evidence of considerable traumatic pressure at the time of the injury, that pressure was upon the soft tissues and not upon the joint, and that a trauma, if severe enough to produce fractures or dislocations, would aggravate arthritis.

Dr. Frank C. Murrah was also called by the plaintiff in error. He testified that on June 28, 1924, he made a physical examination and took X-ray pictures of the applicant; that he found the reflexes normal, and when in a stooped

position there were no tender areas or muscle contractions in the entire length of the spine; that different experiments revealed no pain in the back; that lateral and backward motions of the spine were made slowly and were not painful; that motions of other joints were normal and without pain; that the applicant had a very destructive and extensive pyorrhea, the gums in places being absent for one-eighth of an inch; that the teeth were poor and covered with sordes and his breath was very offensive; that the tonsils were enlarged and the mouth and throat inflamed; that the X-ray pictures disclosed an extensive lipping of all the lumbar vertebræ, with exostoses on several of the transverse processes of the lumbar vertebræ, and that the crests of both ilii were rough and showed a few exostoses. From his examinations and X-ray pictures the doctor expressed the opinion that the applicant's trouble was chronic arthritis of the lumbar vertebræ due to infection, the teeth probably being the main source; that the arthritic condition probably started two and a half or three years before and had been progressive in nature, and that a very severe injury to such a condition might cause muscle spasms. The doctor admitted on cross-examination that at the time he examined the applicant he did not think he was able to load coal but that he was able to do lighter work.

The grounds upon which the plaintiff in error seeks a reversal of the judgment and the setting aside of the award are, (1) that there is a material variance between the application for the adjustment of claim and the award; and (2) that the evidence does not justify an award for permanent disability.

The application used was upon a form provided by the Industrial Commission and was designed for use in any case. The sums demanded weekly for temporary total disability, for partial disability and for the loss of use of the legs were specified, but in the item for complete and permanent disability the sum claimed per week was omitted.

An application for the adjustment of a claim for compensation is in the nature of a pleading and should be consistent with the findings of the commission in making the award. (*Consolidated Coal Co.* v. *Industrial Com.* 320 Ill. 281; *Consumers Co.* v. *Industrial Com.* 315 id. 592; *General Construction Co.* v. *Industrial Com.* 314 id. 58; *Garden City Foundry Co.* v. *Industrial Com.* 307 id. 76.) It is not, however, a formal pleading and need not state all the elements of a cause of action, as is required in a declaration in an action at law. The application is sufficient if it states the nature of the accident and the character of the injury to such an extent that it fairly advises the employer of the nature of the claim and enables him to ascertain the facts and to prepare his defense. The difference between partial and complete disability for work is one of degree. No exact rule can be laid down which will clearly distinguish between a disability which renders a person partially incapable of work and a disability which does so completely. It is often impossible to determine the extent or degree of the disability until long after the injury. The question is necessarily one of fact. While the burden of proof is on the claimant and the common law rules of evidence must be observed, the evidence may extend to a full development of the facts concerning the accident and the nature and extent of the injury alleged. The insertion in the application of the sum claimed each week for complete and permanent disability was not essential. (*Madison Coal Corp.* v. *Industrial Com.* 320 Ill. 65.) The application was sufficient to allow the introduction of evidence showing the actual disability caused by the accident and to sustain an award to the extent justified by the evidence. *Consolidated Coal Co.* v. *Industrial Com. supra.*

The claimant testified that since the accident he constantly suffered pain in the back and could not rest, that he was unable to work, and that his physical condition was not improving and he was losing weight. Dr. Green, who tes-

tified on the claimant's behalf, expressed the opinion that he had arthritis; that this condition would be aggravated by a sprain or trauma, and that he was unable to perform manual labor which involved bending or lifting. Dr. Roberts, who had treated the claimant and examined him several times, testified that although there was evidence of considerable traumatic pressure at the time of the injury, the pressure was upon the soft tissues, only; that the claimant suffered from osteo-arthritis in the back and infection from the teeth; that while the injury might have affected his condition temporarily and prolonged the period of recovery it had no permanent effect. Dr. Roberts released the claimant for work on July 30, 1923. Dr. Murrah, who examined him on June 28, 1924, found that he suffered from chronic arthritis, and thought he was not able to load coal but that he could do lighter work. Both doctors Roberts and Murrah testified that the claimant's condition was of long standing and progressive in character.

It is not disputed that the arthritic condition existed before the accident occurred in the mine and that this condition is permanent. There is no evidence that any bone or joint was injured in the accident or that the effect of the injury was other than temporary, and no physician testified that the claimant was wholly and permanently incapable of work. Dr. Green believed him unable to perform manual labor which required bending or lifting. Dr. Murrah's opinion was that he could do work lighter than loading coal, while Dr. Roberts testified that on November 1, 1923, he had fully recovered from the injury suffered in the mine. The award made was for complete and permanent disability and included a pension for life. Such an award is justified only in case the employee is rendered wholly and permanently incapable of work as a result of the injury of which complaint is made, and the burden is upon the applicant to establish the fact by competent evidence. The proof to warrant such an award must be suffi-

cient to support the legitimate conclusion that the accidental injury caused complete and permanent disability for work. (*Mt. Olive and Staunton Coal Co.* v. *Industrial Com.* 320 Ill. 618; *Old Ben Coal Corp.* v. *Industrial Com.* 320 id. 230; *Consolidated Coal Co.* v. *Industrial Com. supra.*) The award in this case is not sustained by a preponderance of the evidence.

The judgment of the circuit court is reversed and the cause is remanded to that court, with directions to set aside the award and remand the cause to the Industrial Commission for a further hearing upon any competent evidence which either party may see fit to offer.

*Reversed and remanded, with directions.*