THE EQUITABLE COAL COMPANY, Plaintiff in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(JOHN BROWN, Defendant in Error.)

*Opinion filed April 20, 1927.*

WORKMEN'S COMPENSATION—*when an award for complete loss of use of eye is not sustained—burden of proof.* The burden is on the applicant to establish his claim that an injury in the course of his employment has resulted in the complete and permanent loss of the use of an eye, and such claim is not established where physicians testify that the employee can read with the eye, that it shows no evidence of traumatic injury or scar, and that the abnormal condition of the eye is due to some systemic disease and existed prior to the alleged injury.

WRIT OF ERROR to the Circuit Court of Perry county; the Hon. LOUIS BERNREUTER, Judge, presiding.

GEORGE D. ANTHONY, for plaintiff in error.

J. B. LEWIS, for defendant in error.

Mr. JUSTICE DEYOUNG delivered the opinion of the court:

John Brown, a miner, forty-nine years of age, filed with the Industrial Commission an application for compensation from his employer, the Equitable Coal Company. He charged in his application that on September 24, 1923, while cutting coal overhead in the mine of that company, he "was struck in the right eye with a piece of coal, injuring the sight." The arbitrator awarded the applicant $17 per week for four weeks' temporary total incapacity, and a like sum each week for 100 weeks under paragraph (*c*) of section 8 of the Workmen's Compensation act for the reason that the injury caused permanent and complete loss of use of the right eye. The award was approved by the Industrial Commission, and its decision was confirmed by

the circuit court of Perry county. The company petitioned this court for a writ of error. The petition was granted, and the cause is here for a further review.

On the hearing before the arbitrator the parties agreed that the relation of employer and employee existed between them; that they were governed by the provisions of the Workmen's Compensation act; that notice of the accident had been given and demand for compensation had been made within the time prescribed by the act; that the applicant's earnings were $1456 annually, or $28 weekly; that he had three children under the age of sixteen years; that first aid, medical, surgical and hospital services had been rendered, and that compensation for four weeks' temporary total disability, at the rate of $17 per week, had been paid. The employer, however, denied that the accidental injury for which compensation was sought had been suffered in the course of the applicant's employment.

Brown testified before the arbitrator that while working in the mine of the plaintiff in error on September 24, 1923, he struck a sulphur streak overhead with his pick and something hit him in the corner of the right eye; that the injury was painful and he could hardly see his way out of the mine; that his eyes were in good condition prior to the accident; that on the next day his right eye was inflamed and he consulted Dr. J. D. Byrne, who treated the eye for four weeks, during which period he did not work; that he also received a day's treatment at the Haley Eye Infirmary, at Centralia; that he later consulted Dr. A. B. Troupa, a specialist at Carbondale, and that when he resumed his employment the sight of his right eye was impaired, he could not distinguish colors, and the eye seemed to be growing worse continually.

Dr. Troupa testified that he examined Brown's eye at different times and received a history of the case from him; that on an external examination he found on the eye-ball a dark-brown area about three millimeters in size; that this

area extended from the conjunctiva to the cornea; that it showed an aspect different from the other part of the eyeball; that it looked as though the eye had been seared by some hot object and there was the beginning of a ptergium; that the pupil was sluggish in re-action and dilated evenly; that the tension was normal, the eye was not inflamed, both upper and lower lids were normal in appearance and no scar was apparent on the cornea; that there was a slight amount of crust formation along the lower lid; that an examination of the macula disclosed five yellowish-white, glistening, elevated dots in and around the macula itself; that the macula was not destroyed and appeared as in a normal eye, but it was blurred, with irregular edges, except that around the periphery of the disc there was an area about two millimeters wide which seemed to differ slightly from the rest of the fundus, although that was not a pathological condition, as in the macula the disc appeared normal and the media of the eye was clear; that a test of color perception in the right eye showed that the applicant could not distinguish between colors but his light perception and light projection were normal; that the fundus refracted distinctly and no opacities were seen, and that the left eye was normal in every respect. Upon cross-examination Dr. Troupa testified that the five dots on the inside of the eye were abnormal and that a foreign body striking the eye on the outside might have caused them; that in his opinion the condition which he found was caused by the accident or by the presence of some foreign substance in the eye, although he admitted that it might have been brought about either by a diseased condition of the eye or by some disease, and that in reaching his conclusion he took into consideration the history of the case, without which he would not have made a diagnosis. The plaintiff in error moved to strike out all of Dr. Troupa's testimony on the ground that he was testifying as an expert and not as a physician according treatment, and that it was improper to

base any part of his conclusion on the history of the case. The motion was overruled and an exception was taken.

The only evidence offered in behalf of the plaintiff in error before the arbitrator was that of Dr. Byrne, who testified that the applicant came to his office on September 25, 1923, when his eyes were negative with the exception of a conjunctivitis, for which he was treated; that he examined the applicant again about December 31, 1923, and found that the right eye cornea was clear but that both eyes had a slight conjunctivitis and the pupils re-acted; that the next examination was made on January 24, 1924, when the vision of both eyes was normal, and there was no evidence of a scar or burn on the eye, nor were any dots discernible, and that he made a malingering test and the applicant was considerably confused in his readings. On cross-examination Dr. Byrne testified that he would not say that he did not find any injury, because in his first report he mentioned conjunctivitis, which is caused by injury, infectious disease, dust or germs, and conjunctivitis might possibly affect the vision.

On review before the Industrial Commission the applicant offered no evidence. Two specialists in diseases of the eye were called by the plaintiff in error. Dr. Sidney Walker, Jr., testified that he examined the applicant on April 11, 1924; that he found no evidence of any scar or injury to the right eye-ball; that the lids and other structures appeared negative; that an examination with the ophthalmoscope in the fundus of the right eye, in the macula region, revealed a central choroidoretinitis, which is an inflammation of the eye involving the choroid and retina, and may arise from many causes, usually disease but sometimes trauma, and that there was some loss of vision in the right eye and some deficiency in the right eye-ball, but that these defects were not traumatic. Dr. Walker did not find the conditions concerning which Dr. Troupa had testified but believed that the applicant was a malingerer, because on a

test he read with his right eye.   The cause of the applicant's condition, in the doctor's opinion, was some systemic disease.

Dr. W. T. Plassman examined the applicant on May 15, 1924.   He testified that he found the eyelids, conjunctiva and macula in their normal state, except a slight thickening of the macula to the nasal and temporal sides of the cornea; that the cornea and antechamber were clear; that the fundus was negative, except a central choroidoretinitis; that upon a certain malingering test the applicant stated that he could see two lines of letters distinctly, which indicated that he saw one of the lines with his right eye; that choroidoretinitis may arise from many causes, among them infection of the body and other systemic diseases, and that it may also be caused by trauma, but that in the instant case there was no evidence of a wound nor was there a scar. Dr. Plassman did not find the conditions which Dr. Troupa had detailed.

Plaintiff in error contends that the award is against the manifest weight of the competent evidence.   The applicant's claim was supported by the testimony of himself and of Dr. Troupa.   The latter admitted that the conditions which he found were not necessarily of traumatic origin but might have been caused by disease or the presence of a foreign substance in the eye.   Three physicians were called by the plaintiff in error.   All testified that the applicant's right eye gave no evidence of a traumatic injury and that no scar was discernible upon it.   Drs. Walker and Plassman made tests which showed that the applicant could read with his right eye, and both physicians attributed the condition of that eye to some systemic disease.   The conditions found by all the physicians indicate that the eye was affected prior to the time the applicant was engaged in cutting the coal overhead on September 24, 1923.

The manifest weight of the evidence shows that the applicant did not sustain the complete and permanent loss of

the use of his right eye, as found by the arbitrator and the commission. The burden was upon him to establish his claim by a preponderance of the competent evidence. (*Consolidated Coal Co.* v. *Industrial Com.* 322 Ill. 510; *Mt. Olive Coal Co.* v. *Industrial Com.* 320 id. 618.) That burden has not been discharged.

The judgment of the circuit court is reversed and the cause is remanded to that court, with directions to set aside the award and to remand the cause to the Industrial Commission for a further hearing upon any competent evidence which either party may see fit to offer.

*Reversed and remanded, with directions.*