E. W. POAST, APPELLEE, V. OMAHA MERCHANTS EXPRESS
& TRANSFER COMPANY, APPELLANT.

FILED JANUARY 26, 1922. No. 22193.

1. **Master and Servant:** INJURIES TO SERVANT: COMPENSATION. Where an employee, working under the provisions of the workmen's compensation act, before the 1921 amendment became effective, sustains an injury resulting in temporary total disability, he is entitled to recover compensation under subdivision 1, sec. 3662, Rev. St. 1913, as amended by chapter 85, Laws 1917, during the period of total disability, not exceeding 300 weeks, and, in addition thereto, when it becomes ascertainable that the injury will result in a certain percentage of permanent partial loss of the use of the injured member, the employee is entitled to compensation for such loss under the provisions of subdivision 3 of said section 3662, Rev. St. 1913.

2. **Evidence** examined and *held* to sustain the judgment of the trial court.

APPEAL from the district court for Douglas county: ARTHUR C. WAKELEY, JUDGE. *Affirmed.*

*Kennedy, Holland, DeLacy & McLaughlin,* for appellant.

*Bigelow, Peterson & LaViolette, contra.*

Heard before MORRISSEY, C. J., LETTON, ROSE, DEAN, ALDRICH, DAY and FLANSBURG, JJ.

DAY, J.

This action is based upon the provisions of the workmen's compensation act, sections 3642-3696, Rev. St. 1913, as amended by chapter 85, Laws 1917.

It appears that the plaintiff, while in the employ of the defendant, on January 31, 1919, sustained an injury resulting in a comminuted fracture of the tibia and fibula of the left leg just above the ankle joint. There is no question but that this injury arose out of, and in the course of, the plaintiff's employment. At the time the plaintiff was receiving a weekly wage of $24.40, and under the law was entitled to receive compensation at

the rate of $12 a week. Following the injury the plaintiff was taken to a hospital, where he remained, receiving needful medical attention, until February 21, 1919, when he was permitted to return to his home. About the middle of April he began walking with crutches, and a short time thereafter began walking with the use of a cane. On July 28, 1919, he had so far recovered as to resume work, and applied to the defendant, in whose employ he had been for 21 years, for employment, but was not able at that time to secure work with the defendant. He did, however, secure employment as a freight handler with a railroad company, and continued work in that capacity until October 21, 1919, when, singularly enough, he again sustained a fracture of his left leg at the same point as the prior injury. Following the injury of January 31, the defendant paid compensation to the plaintiff at the rate of $12 a week up to June 27, a period of 21 weeks, at which time it was the theory of the defendant that the plaintiff had entirely recovered, and that they were under no legal obligation to make further payments. After plaintiff had received the second injury, as above indicated, he filed with the compensation commissioner in December, 1919, a petition praying for compensation for permanent partial disability resulting from the injury sustained on January 31. Before the compensation commissioner the plaintiff was awarded an additional sum of $42.80, together with medical and hospital expenses. From the award of the compensation commissioner the plaintiff appealed. Upon the trial in the district court there was a finding and judgment that the plaintiff had suffered a loss of 35 per cent. of the normal use of his foot as a permanent partial disability; that under the law he was entitled to compensation for such permanent partial disability at the rate of $12 a week for 43 3-4 weeks, making an aggregate sum of $525, beginning June 27, 1919; and in addition he was awarded the sum of $7 hospital expenses. This sum of $525 was allowed in addition to the compensation paid by the de-

fendant for the period from January 31, 1919, to June 27, 1919, a period of 21 weeks. From this judgment the defendant appeals.

It is first urged by the defendant that the evidence is not sufficient to support the finding and judgment that the plaintiff suffered a permanent partial disability as a result of the injury of January 31, 1919. Upon this question the medical testimony was somewhat at variance. There was testimony which supported the plaintiff's theory that he had sustained a permanent partial disability in the use of his foot. One of the physicians gave it as his opinion that the plaintiff had lost 35 per cent. of the normal use of his foot; that the plaintiff in using his foot stood upon the outer edge of the foot, and was not able to stand squarely upon it; that the foot was out of alignment; and that the injury was permanent. Other physicians gave it as their opinion that the injury was not of a permanent character. There being testimony in the record which supports the judgment, the rule is well established that, where there is a conflict of evidence, the judgment will not be set aside unless it appears to be clearly wrong. Under the facts of this case we are not at liberty to disturb the judgment upon the ground that the evidence does not support it.

It is the main contention of the defendant that the total amount of plaintiff's recovery is limited to compensation for 43 3-4 weeks, and it is argued that, inasmuch as the defendant has heretofore paid to the plaintiff compensation for 21 weeks, during the period of his total disability, therefore it should be required to pay only for the additional period of 22¾ weeks. The question thus presented turns upon the meaning of section 3662, Rev. St. 1913, as amended by chapter 85, Laws 1917, which was the law in force at the time of the injury. That section of the statute establishes a schedule of compensation to be paid for injuries to employees resulting in disability, and is divided into several subdivisions. Subdivision 1 prescribes that there shall be paid to the injured employee

"for the first 300 weeks of total disability" 66 2/3 per cent. of the wages received at the time of the injury, not exceeding, however, $12 a week. This subdivision does not contemplate that compensation should be paid for a full period of 300 weeks, unless there is a total disability for that length of time. It is clearly the meaning of this subdivision that the payments should continue during the time of total disability. Subdivision 3 prescribes a schedule of compensation to be paid for the loss of various members and provides that the compensation so fixed "shall be exclusively as follows:" Then follows a number of short subparagraphs declaring what compensation shall be paid for the loss of various members, among them, "for the loss of a foot 66 2/3 *per centum* of daily wages during 125 weeks." Another subparagraph provides: "In all cases involving a permanent partial loss of the use or function of any of the members mentioned in subdivision 3 of section 3662, the compensation shall bear such relation to the amount named in said subdivision 3 of section 3662 as the disabilities bear to those produced by the injuries named therein." These several provisions of the act must be construed together, giving effect to each of them if possible to do so. Under subdivision 1 of section 3662, it appears that it was the manifest intention of the legislature that in all cases the injured employee is entitled to compensation for injuries resulting in a total disability. It is a matter of common knowledge that most of the industrial accidents result in total disability for some time at least. Where the employee, for instance, suffers a broken limb, it is certain that he will be totally disabled for an indefinite period. Whether such an injury will ultimately result in the total loss of the member, or whether it will result in a permanent partial loss of the use of the member, or whether a complete restoration to normalcy will be effected, cannot at the outset be foretold with any degree of certainty.

During this period of total disability and uncertainty of the ultimate outcome, the injured employee is entitled to compensation under the first subdivision of section 3662. When the time arrives when it becomes ascertainable that he will suffer a total loss of the use of the member, or a permanent partial loss of the use of the member, then the injured employee is entitled to compensation under the provisions of subdivision 3 of section 3662. That this must have been the intention of the legislature, as applied to this class of injuries, is, we think, made clear by a simple illustration: Suppose that an employee receives an injury to his foot of such a character that it is uncertain whether it will be necessary to amputate the member. In order to save the foot he is treated by physicians and surgeons for a period of one year, during which time he is under constant treatment, and totally incapacitated for work. During this period he is paid as for a total incapacity at the rate of $12 a week, aggregating $624. At the end of the year it develops that the efforts of the physicians and surgeons have been successful; the employee's foot has been saved from amputation, and he is left with a 10 per cent. permanent loss of the use of the foot, which, under the provisions of subdivision 3 of said section 3662, would entitle him to receive compensation for 12½ weeks, aggregating $150. It becomes apparent in the illustration given that, if the limit of the employee's recovery is $150, he has been overpaid, and would be owing his employer the difference between these two amounts, or $474. This was not the spirit of the law. A fair construction of the law would imply that where an employee sustains an injury resulting in temporary total disability, but of such a character that the extent of the disability cannot then be determined, the employee is entitled to receive compensation under subdivision 1 of section 3662 until such time as a cure is effected, or until it can be determined definitely what percentage of permanent partial loss the employee will suffer, when the provisions

of subdivision 3 of section 3662 apply. This we understand to be the purport of the decisions in *Hall v. Germantown State Bank,* 105 Neb. 709, and *Ulaski v. Morris & Co.,* 106 Neb. 782. There are some classes of injuries in which it may be determined at once that the injured party will lose the injured member. Many cases in which the first treatment calls for amputation arise. In such cases it is at once ascertainable that the ultimate result of the injury will be the loss of the member. In such cases it seems to be within the contemplation of the statute that the employee is limited in his recovery to the number of weeks prescribed in subdivision 3 of section 3662 for the loss of the member. The case of *Abel Construction Co. v. Goodman,* 105 Neb. 700, falls within this latter rule. In that case, as we understand it, the loss of the eye was complete at the time of the accident.

From the foregoing discussion, it follows that the judgment of the district court is right, and it is, therefore,

Affirmed.