DOSEN, Respondent, v. EAST BUTTE COPPER MINING CO., Appellant.

(No. 6,061.)

(Submitted February 16, 1927.  Decided April 2, 1927.)

[254 Pac. 880.]

*Master and Servant—Workmen's Compensation—Construction of Act—Duty of Employee—Appeal to District Court—Trial De Novo—Definition—Appeal to Supreme Court—Time.*

Workmen's Compensation—Appeal to District Court—Time for Taking Appeal to Supreme Court.
1.  The Industrial Accident Board is not an "inferior court" within the meaning of section 9732, Revised Codes of 1921, providing that an appeal from a judgment rendered on an appeal from an inferior court must be taken within ninety days after the entry of such judgment; hence failure of appellant to serve and file its notice of appeal within ninety days from the entry of the judgment of the district court on appeal from an order of the board does not warrant dismissal of the appeal to the supreme court.

Same—Record of Industrial Accident Board — Certification — When Party Barred to Question Sufficiency.
2.  Claimant for compensation under the Workmen's Compensation Act at whose instance on appeal to the district court the record and proceedings of the Industrial Accident Board were introduced in evidence will not be heard to complain of the sufficiency of the certificate attached thereto, on appeal by his employer to the supreme court.

Same—Appeal to District Court—Trial De Novo—Definition.
3.  The trial on appeal to the district court from an order or reward made by the Industrial Accident Board provided for by section 2959, Revised Codes of 1921, upon the certified record of the board, unless the court in the exercise of its discretion shall permit additional evidence to be introduced, is *de novo* only to the extent it permits additional evidence to be introduced; if the cause is heard on the record of the board the re-examination is in the nature of a review; but in either event the court must render its own judgment irrespective of what has gone before.

Same—Theory of Act.
4.  The theory of the Workmen's Compensation Act is that loss occasioned to the employee by reason of injury shall not be borne by him alone but directly by the industry itself and indirectly by the public, and to accomplish the result intended its provisions must be liberally interpreted.

Statutory Construction—Rule.
5.  In construing a statute courts must give meaning to every word, phrase, sentence and section if it is possible to do so, and

should never declare any part of it inoperative if it is reasonably possible to uphold it.

Workmen's Compensation—Construction of Act.

6. *Held,* that the provision of section 2919, Revised Codes of 1921 (Workmen's Compensation Act) and of that section as amended by Chapter 121, Laws of 1925, that compensation for *all classes* of injuries other than such as is provided for medical, surgical and hospital attention, and burial benefits, shall run consecutively and not concurrently, the payments succeeding one another in regular order, and that payment shall not be made for two classes of disability over the same period, by the use of the word "classes" refer to the four disabilities mentioned in sections 2912–2914, Revised Codes, to-wit: temporary total, permanent total, temporary partial and permanent partial disability.

Same—Construction of Act.

7. The period of temporary total disability for which compensation is prescribed by section 2912, Revised Codes, is the temporary period immediately after the accident during which the employee is totally incapacitated for work by reason of the illness attending the injury—the healing period; if complete recovery then ensues, compensation ceases; if that total disability proves permanent, payment is governed by section 2913; if only partial, he is also entitled to compensation provided for in such a case within the limitations prescribed.

Same—Construction of Act.

8. Section 2920, Revised Codes of 1921, providing that in case of loss of a member of the body of an injured employee, the compensation provided shall be "in lieu of any other compensation," aside from medical and hospital services provided for in section 2917, *held* to mean that where amputation of a member becomes necessary the compensation provided therefor by section 2920 is exclusive, no further compensation for disability on that account being allowable, such compensation, however, being, in addition to that theretofore paid him for temporary total disability under section 2912.

Same—Construction of Act.

9. Compensation for permanent partial disability and also for specific loss of the use of a member of the body (sec. 2920, above) cannot be awarded where both result from the same injury.

Same—Employee Bound to Make Reasonable Effort Toward Cure of Disability.

10. An injured employee is in duty bound to make use of every available and reasonable means to make himself whole, so far as possible, and therefore may not, upon being advised by the best medical and surgical talent after many months of treatment that, where the injury was to the lower part of one of his legs, amputation was the only remedy because of an affection of the bone, refuse to submit to the operation and in the meantime draw compensation as for a partial disability; and if he finally submits thereto, payments made to him from the time he first failed to take the surgeon's advice may properly be deducted from the amount found ultimately due him.

Same—Total Disability—Definition.

11. Disability, within the meaning of the Workmen's Compensation Act is not total where it appears that the claimant's earning

power is not wholly destroyed and he is still capable of performing remunerative employment; in such a case he must make an active effort to procure such work as he can still perform; and one alleging that he is totally incapacitated from obtaining remunerative employment has the burden of proving it by satisfactory evidence.

[1] Workmen's Compensation Acts, C. J., sec. 109, p. 114, n. 9; sec. 132, p. 126, n. 75 New; sec. 148, p. 130, n. 45 New.
[2] Workmen's Compensation Acts, C. J., sec. 132, p. 126, n. 75 New.
[3] Workmen's Compensation Acts, C. J., sec. 34, p. 40, n. 95, p. 41, n. 99; sec. 126, p. 121, n. 32, 33.
[4] Workmen's Compensation Acts, C. J., sec. 5, p. 7, n. 32, p. 9, n. 38, 42.
[5] Workmen's Compensation Acts, C. J., sec. 82, p. 93, n. 64. Statutes, 36 Cyc., p. 1128, n. 57, 58.
[6] Workmen's Compensation Acts, C. J., sec. 91, p. 97, n. 35.
[7] Workmen's Compensation Acts, C. J., sec. 82, p. 94, n. 89; sec. 83, p. 94, n. 97 New; sec. 127, p. 122, n. 40.
[8] Workmen's Compensation Acts, C. J., sec. 83, p. 94, n. 97 New; sec. 89, p. 96, n. 25 New.
[9] Workmen's Compensation Acts, C. J., sec. 88, p. 96, n. 21 New; sec. 127, p. 122, n. 40.
[10] Workmen's Compensation Acts, C. J., sec. 62, p. 71, n. 65; sec. 94, p. 98, n. 49 New.
[11] Workmen's Compensation Acts, C. J., sec. 83, p. 94, n. 93; sec. 112, p. 115, n. 30 New; sec. 132, p. 126, n. 75 New.

*Appeal from District Court, Silver Bow County; George Bourquin, Judge.*

PROCEEDING for compensation under the Workmen's Compensation Act by Bob Dosen, employee, opposed by the East Butte Copper Mining Company, employer. From a judgment of the district court on appeal from an award by the Industrial Accident Board, both claimant and the employer appeal. Reversed and remanded, with directions.

*Messrs. Kremer, Sanders & Kremer,* for Appellant Mining Company, submitted briefs; *Mr. Alf. Kremer* argued the cause orally.

The district court erred in overruling the findings of fact and conclusions of law of the Industrial Accident Board. Under the decisions of all the states having Compensation Laws, the court upon appeal from the decision of the Industrial Accident Board is bound to sustain the findings of the board

if supported by any evidence. No discretion is given in the matter.

The court, under section 2960, Revised Codes, may, as an aid to it, allow additional evidence to assist it in deciding whether the findings of the board were made in accordance with the "facts or the law," but even with such additional evidence before it, if the findings of the board are supported by any evidence, it is the duty of the district court sitting as a court of review to sustain said findings. (*Ex parte Paramount Coal Co.*, 213 Ala. 281, 104 South. 753; *Owl Drug Co.* v. *Industrial Acc. Com.*, 71 Cal. App. 303, 234 Pac. 921; *Smith & Son* v. *Industrial Acc. Com.*, 72 Cal. App. 240, 236 Pac. 962; *Kettering Mercantile Co.* v. *Fox*, 77 Colo. 90, 234 Pac. 464; *Goodman Mfg. Co.* v. *Industrial Com.*, 316 Ill. 394, 147 N. E. 394; *Bunker* v. *Motor Wheel Corp.*, 231 Mich. 334, 204 N. W. 110; *Rector* v. *Roxana Petroleum Corp.*, 108 Okl. 122, 235 Pac. 183; *Aetna Life Ins. Co.* v. *State Industrial Com.*, 109 Okl. 65, 234 Pac. 765.)

The principle of law requiring an injured person to minimize his damage when possible has been extended to and applied to cases coming within the Compensation Law. An injured employee cannot sit idly by and allow his disability to increase to the damage of his employer when such disability can be cured or mitigated. (*Pacific Coast Casualty Co.* v. *Pillsbury*, 171 Cal. 319, 153 Pac. 24; *Myers* v. *Wadsworth Mfg. Co.*, 214 Mich. 636, 183 N. W. 913; *Strong* v. *Sonken-Galamba Iron & Metal Co.*, 109 Kan. 117, 18 A. L. R. 415, 198 Pac. 182; *Lesh* v. *Illinois Steel Co.*, 163 Wis. 124, L. R. A. 1916C, 105, 157 N. W. 539; *Kricinovich* v. *American Car & Foundry Co.*, 192 Mich. 691, 159 N. W. 362; *O'Brien* v. *Albert A. Albrecht Co.*, 206 Mich. 101, 6 A. L. R. 1257, 172 N. W. 601.)

"An injured employee does not suffer 'total disability' because of the fact that he cannot perform the same kind of work he was performing at the time of the injury, but, if he can perform any kind of work, he is entitled to compensation for 'partial disability' defined by Workmen's Compensation Act,

section 15, as being the difference between what he was earning before the injury and what he is able to earn thereafter.'' (*Connelly's Case,* 122 Me. 289, 119 Atl. 664; *Shannon* v. *Hercules Powder Co.,* 1 Cal. Ind. Acc. Com. 199, 4 N. C. C. A. 860; *Crockett* v. *F. T. Coppino & Sons,* 202 App. Div. 535, 195 N. Y. Supp. 153; *McNerney* v. *Heller,* 200 App. Div. 285, 192 N. Y. Supp. 882; *Leitz* v. *Labadie Ice Co.,* 211 Mich. 565, 179 N. W. 291.)

Relying upon the provisions of section 2919, Revised Codes of 1921, which provides compensation for all classes of injury shall run consecutively and not concurrently, counsel for claimant contend that all payments made to the claimant as a temporary total disability must be allowed in addition to any amount due him as a total disability.   Their theory is that the compensation awarded claimant under section 2912 for temporary total disability is merely to recompense the workman for loss of time and inability to work while he is recovering from his injury.   Counsel designate this period of temporary total disability as the ''healing period.''   This theory of the law has, no doubt, been inspired by decisions of those states whose Acts make specific provision for this intermediate period when the extent of the employee's injuries is still undetermined but the employee is nevertheless incapacitated from resuming his occupation.   But this theory cannot be established here under the terms of the Montana Act as it now reads.

It is also counsel's theory that the compensation awarded claimant under section 2920 is not to compensate claimant for a loss of time by reason of being deprived of some specific member of his body as scheduled in section 2920, but to compensate him for the deprivation of such member of the body. This is not the theory of the compensation law.   While some of the Acts award compensation for incapacity for work and others for disability, the purpose of the various Acts is the same.   Whatever may be counsel's theory of section 2920— whether compensation paid thereunder be for loss of time or loss of the member causing disability—under the specific pro-

visions of section 2920, the compensation so awarded, in case of specified injuries, is "in lieu of any other compensation provided by this Act." The phrase, no doubt, was incorporated in said section after due deliberation by the legislature. It saw fit to limit the sweeping effect of this provision by incorporating in the same section a proviso that medical and hospital services as provided by section 2917 should be in addition to the compensation awarded under the terms of the same section 2920. If the language of the section "in lieu of all other compensation provided by this Act" was not meant by the legislature to have the full force and effect of just what it says, it would have been only natural for the legislature to have limited the effect of these words by the provisions of sections 2912, 2913 and 2914, as well as that of section 2917, which it specifically did.

Our contention is: Claimant cannot be awarded compensation under section 2914 for partial disability during the alleged "healing period" (section 2912 as interpreted by claimant) in addition to the 140 weeks' compensation awarded under the terms of section 2920 for injury to his right leg. In computing the amount of permanent total disability to be awarded claimant-appellant, the district court was bound by the terms of section 2920 as far as the injury to the right leg was concerned, the same as was the Industrial Accident Board in computing the amount of partial disability. Both are contained in the amount of $2,525, the award of the board and the judgment of the district court. The compensation of 140 weeks for this injury to the right leg is the total and final amount that can be awarded for the leg injury. It is "in lieu of all other compensations" and should the "healing period" (as interpreted by claimant-appellant) be five weeks or five years under the terms ·of our Act, it is the maximum compensation which can be awarded for the injury to the right leg of claimant.

Despite the provision of section 2920, counsel contend that the payment under one section of the statute is not a payment

under the other.    Counsel state that under statutes similar to ours, this theory is supported by the weight of authority. Such, however, is not the fact.    [A review of decisions of other courts and of Acts of other states follows.]

Due to the lack of uniformity in the provisions of the various Compensation Acts of the different states, it is possible to find decisions to support almost any interpretation sought to be placed thereon.    The cases cited by counsel are an example thereof.    As a further example of how any particular situation arising under the Act can be supported by authorities we refer to counsel's citation from 1 Honnold on Workmen's Compensation, section 181, which counsel quoted: "Award for temporary disability or under a schedule for specific injury, cannot be deducted from the award for permanent disability." Upon examination of the text we find that the above statement in Honnold is copied from the opinion of the attorney general of the state of Washington, December 12, 1911, and has no judicial decision to support this bald statement.    Nullifying the above statement of the author quoted in support of appellant Dosen's contention is the further citation from the same author: "Where compensation under the schedule is in lieu of all other compensation, and a claimant has already received compensation allowed for temporary total disability before it becomes known that the sight of the eye is completely destroyed, this amount is to be deducted from compensation provided by the schedule."    (1 Honnold on Compensation, sec. 182, citing *Kreppel* v. *Boyland,* 2 N. Y. St. Dep. Rep. 489.) In New York the payments for injury set forth in the schedule are normally in lieu of all other compensation, but if the period of temporary total disability is protracted beyond designated periods, the schedule period is protracted accordingly.    Even under such a proviso the amount paid for temporary disability is deducted from the amount of the final award.

We maintain that the language of 2920, Revised Codes of 1921, "in lieu of all other compensation provided by this Act," means exactly what it says.    There is no ambiguity in the

words. They conflict with no other provision of the Act.
There can be no confusion of the intent of the legislature in the
incorporation of these words in this particular section of the
Act.

*Messrs. Maury & Brown,* for Claimant Dosen, submitted
briefs; *Mr. H. Lowndes Maury* argued the cause orally.

We believe that total disability means an inability to follow
the occupation or some closely similar occupation followed by
the workman, before the injury. Age, education, training,
general physical and mental capacity and adaptability may
and often should be taken into consideration in arriving at a
just conclusion as to the percentage of impairment of earning
capacity. (*Duprey's Case,* 219 Mass. 189, 106 N. E. 686;
*In re Gillen,* 215 Mass. 96, L. R. A. 1916A, 371, 102 N. E. 346.)
A case similar on the facts, as far as the injuries are con-
cerned, though the man there was working at odd jobs, is
*Roller* v. *Warren,* 98 Vt. 514, 129 Atl. 168. Roller's injuries
were not nearly so severe as Dosen's. Roller had osteomyelitis
of the leg; his other injuries were not nearly as severe as
Dosen's. The Vermont court affirmed the ruling of total
disability.

The Texas and Kansas courts have held that total incapacity
for work does not imply an absolute disability to perform any
kind of labor, but that a person disqualified from performing
the usual tasks of a workingman in such a way as to enable him
to procure and retain employment is ordinarily regarded as
totally incapacitated. (*Home Life Co.* v. *Corsey* (Tex. Civ.
App.), 216 S. W. 464; *Bishop* v. *Underwriters* (Tex. Civ. App.),
254 S. W. 411; *Moore* v. *Peet Bros.,* 99 Kan. 443, 162 Pac. 295.)
The Maine court is somewhat stronger. (*Connelly's Case,* 122
Me. 289, 119 Atl. 664; *Hanley* v. *Union Stock Yards,* 100 Neb.
232, 158 N. W. 939; *State* v. *District Court,* 129 Minn. 423, 152
N. W. 838.)

Under the Louisiana Workmen's Compensation Act, com-
pensation is provided for "total disability to do work of any

character." In construing that statute in the case of *Myers* v. *Louisiana Ry. etc. Co.,* 140 La. 939, 74 South. 236, in which case Myers, a carpenter, while in the course of his employment, was injured and his hip-joint fractured, one year after the accident he was still unable to go about without crutches, and it appeared that he never would be able to do much carpenter work, especially such as required climbing, nor could he do any work which required him to stand on his feet any length of time, the plaintiff was found to be totally disabled. (See, also, *McDonald* v. *Industrial Commission of Wisconsin,* 165 Wis. 372, 162 N. W. 345.)

The court erred in finding and decreeing that there should have been deducted from the total amount found due the appellant as compensation for total permanent disability the amount paid the appellant by the respondent under his former rating of temporary total disability.

The question here raised has never before been presented to this court, but has been presented and decided by many courts of other jurisdictions whose statutes are in substance the same as those of Montana, and the decisions so made are of aid in the proper construction of the statutes in question.

It will be conceded that the Workmen's Compensation Act, although in derogation of the common law, is not to be strictly construed as such statutes ordinarily are; the true rule being that the statute being one highly remedial should be liberally construed in favor of the workmen. (Sec. 2964, Rev. Codes 1921; *Gobble* v. *Clinch Valley Lumber Co.,* 141 Va. 303, 127 S. E. 176.)

The legislature in enacting our Compensation Law fully realized that the purpose was to insure the workman, to some extent, against loss from accidents in his employment, to give him a speedy and expeditious remedy for his injury and to place upon industry the burden of losses incident to its conduct, and enacted a liberal statute for that purpose. It provided that the workman should be compensated for an injury sustained in an industrial accident from the moment the acci-

dent occurred until its ultimate effect was apparent. It provided, in part, compensation for the loss of certain members of the body and provided different methods of compensation to be paid as determined by the gravity of the injury and the result in loss that the workman might suffer either temporary, partial or permanent. Thus, section 2917, Revised Codes of 1921, provides for the furnishing of medical aid and hospital services to the workman during the first two weeks after his injury. In section 2912 it provided the amount and duration of compensation while the injured workman was temporarily, totally disabled as a result of the accident. By section 2913 it provided the amount and duration of compensation for an injury which produced a total disability, permanent in character. By section 2914 it provided the amount and duration of compensation for an injury that produced a partial disability. By section 2920 it provided the amount and duration of compensation for certain specified injuries, and by section 2919 it determined the methods by which the various compensations should be paid.

It is obvious that a workman receiving an injury of any seriousness, such as a broken bone, would be temporarily, totally disabled for some period of time, and certainly during the period of time that the bone was healing. The length of time that the temporary, total disability continues, of course, is governed by the seriousness of the injury and the length of time necessary to effectuate a cure, either entirely or partially. The section, however, provides that compensation should not be paid under such a rating for more than 300 weeks. As was well said in *Vishney* v. *Empire Steel & Iron Co.*, 87 N. J. L. 481, 95 Atl. 143: "Temporary as distinguished from permanent disability, under the Workmen's Compensation Act, is a condition that exists until the injured workman is as far restored as the permanent character of the injuries will permit." When that point is reached the classifications of the injured workman must immediately change. If he is cured entirely, he is not then entitled to any further

compensation; if not, the extent of the disability then remaining must be determined and he must be paid compensation therefor under the other provisions of the statute enacted for that purpose. Thus, if he is totally and permanently disabled, section 2913 applies from the time such rating is made, and he is entitled to compensation thereunder for not exceeding 400 weeks. If his remaining disability is partial, he must be compensated as provided by section 2914. If the whole result of the remaining disability is the loss of some member of the body, specifically mentioned in section 2920, he must be compensated as provided in that section. A payment of compensation under one rating and under one section of the statute is not a payment of compensation in any part under the other sections of the statute. (*Poast* v. *Omaha Merchants' Express etc. Co.*, 107 Neb. 516, 186 N. W. 542; *Addison* v. *W. E. Wood Co.*, 207 Mich. 319, 174 N. W. 149; *Ulaski* v. *Morris & Co.*, 106 Neb. 782, 184 N. W. 946; *Crawford* v. *Virginia Iron, Coal & Coke Co.*, 136 Va. 266, 118 S. E. 229; *Pullman Car Lines* v. *Riley*, 1 Del. 440, 114 Atl. 920; *State ex rel. Albert Lea Packing Co.* v. *District Court of Freeborn County*, 146 Minn. 283, 178 N. W. 594; *Marhoffer* v. *Marhoffer*, 175 App. Div. 52, 161 N. Y. Supp. 527; *Smith Lohr Coal Min. Co.* v. *Industrial Acc. Com.*, 291 Ill. 355, 126 N. E. 164; *In re Denton*, 65 Ind. App. 426, 117 N. E. 520; *Aetna Life Ins. Co.* v. *Industrial Com.*, 64 Utah, 230, 228 Pac. 1081.)

Section 2919 leaves no room for construction. It provides in plain and unequivocal language that a payment of compensation under a rating under one section of the statute does not constitute in any manner a payment under a different rating after the rating has been changed and compensation payable under a different section of the statute, and payment for a loss of earning power to be suffered in the future should not be deducted from payments made for a total loss of earning power sustained while temporarily disabled and awaiting a cure of injuries.

MR. CHIEF JUSTICE CALLAWAY delivered the opinion of the court.

Bob Dosen, an employee of the East Butte Copper Mining Company, and while in the course of his employment, was injured on March 3, 1922, by falling down a chute in one of the mines operated by that company.

The employing company, referred to hereafter as the company, had elected to be bound by Compensation Plan No. 1 of the Workmen's Compensation Act, and was proceeding thereunder. The Murray Hospital was bound by contract to care for the company's injured employees. Upon the happening of the accident Dosen was taken to that hospital, where he was found to be suffering from a fractured jaw, a compound comminuted fracture with dislocation of the right ankle, and a fractured left fibula. The company reported the accident to the Industrial Accident Board, and upon April 15, 1922, Dosen filed with the board his formal claim for compensation.

The company accepted Dosen's claim for compensation and treating him as temporarily totally disabled, began paying him at the maximum rate of $12.50 per week. Dosen, referred to hereafter as the claimant, remained in the Murray Hospital for eight months. Dr. Kistler, one of the attending surgeons, advised amputation of the right leg. The claimant refused to submit to amputation. He then voluntarily left the Murray Hospital and went to the "Mayo Hospital" at Rochester, Minnesota. There he was told the bone was rotten and the leg should come off. He then went to Chigago where he remained twenty-eight months, twenty-two of which were in a hospital. The doctors there told him the bone of the leg was rotten, no good. While in Chicago he submitted to an operation for an indirect inguinal hernia.

About September, 1924, the claimant asked for a final settlement, and considerable correspondence was had between his attorney and the Industrial Accident Board concerning

the matter. The company continued paying compensation to the claimant at the rate of $12.50 per week, and had paid him $1,925 up to February 13, 1925. On February 25, 1925, at the request of the company, the claimant was examined by Dr. Allen B. Kanavel of Chicago, who made report to the company and the Industrial Accident Board. Following the receipt of Dr. Kanavel's report the company referred the matter to the board, which through its chairman, on March 30, 1925, wrote claimant a letter reciting the facts as understood by the board and advising him to accept $450 in final settlement. This claimant refused to do. It seems the company offered him $500, which he likewise refused to accept. As the negotiations did not result in a settlement the board directed claimant. to appear for examination at Helena in order that the extent of his disability might be determined. He appeared and submitted to an examination by Doctors John L. Treacy and Rudolph Horsky, physicians and surgeons selected by the board. The doctors fixed the rating of the claimant at "forty per cent total disability." After consideration, the board, on June 5, 1925, found claimant had suffered a permanent partial disability, equivalent to forty per cent of a permanent total disability; that total disability for a permanent total disability in such a case, taking into account the legal provisions governing and the American Experience Table of Mortality, would command a settlement of $6,211.40, of which forty per cent is $2,484.55, and thereupon ordered that the company pay that amount to the claimant, less the sum of $2,525 theretofore paid, leaving a net balance due claimant of $459.55, in full for his claim for compensation as the result of his injury. On June 25 claimant, through his attorneys, filed a petition for a rehearing, to which the company answered. The rehearing was had at Butte on December 1, 1925, before the chairman of the board, at which testimony was received, both parties being represented by counsel. Thereafter the board rendered its decision setting forth the facts we have recited above, with others, in which it discussed

the evidence adduced and the law applicable thereto. The board says in its opinion that "there is substantial agreement among all the doctors who have made examination as to the present physical condition of claimant. He has a healed fracture of the lower jaw on the right side. This condition does not now cause disability. It possibly results in some pain and discomfort due to contraction of the nerves in the scar tissues around the fracture. He does present a marked spiry pyorrhoea alveolaris. In plain English, his teeth are badly infected with pyorrhoea, and the poison, which is generated by this infection and distributed through his system, very likely accounts for most of the pain and discomfort of which he complains. This condition of pyorrhoea is in nowise connected with the injury and can undoubtedly be cleared up by proper medical attention. He has a small post-operative hernia on the right side. This may constitute some disability, but the condition has developed since the time of original injury and is not attributable to such injury. He has a scoliosis of the spine; that is, the curvature with a convexity to the right. This is a secondary condition due to the fact that his right leg is one and one-half inches shorter than the left leg, so that when he stands or walks, there is a tilting of the pelvis. The tilting of the pelvis naturally produces a curvature of the spine. It is the same condition that is to be found in any person where one leg is shorter than the other. This condition of spine curvature possibly constitutes a small percentage of disability. Such disability would be removed by any method that would build up the short leg to a length equal to the longer leg. For instance, amputation of the defective leg and the substitution of an artificial member would correct the present spinal condition and remove what disability now results therefrom."

The board found that the fracture of the left fibula had healed in a normal way. It did not then constitute any disability. The right leg originally suffered a compound comminuted fracture, with dislocation of the right ankle. The

fracture of the small bone of the left leg was about six inches above the ankle joint. A poor union was effected, and as a result of this the lower part of the fibula rests on the heel bone and results in a locking of the ankle joint. As a result of this condition osteomyelitis, or inflammation of the bone, followed. This condition involves both the tibia and fibula of the leg and extends to a point some three or four inches above the injury, and about half way up the limb from the ankle to the knee.

The three doctors who testified at the hearing in Butte were of the opinion that it would be to claimant's best interests to submit to an amputation of the limb some three or four inches above the point of fracture and about halfway between the ankle and knee and the substitution of an artificial member; this for the purpose of stopping the spreading of the osteomyelitis, which might necessitate the amputation of the leg at a higher point.

In its opinion the board says the claimant is a man considerably below the average in mentality. "His physical appearance, other than the fact that he walks with considerable limp, is good." The board found that amputation of the leg at the point designated amounted to twenty-eight per cent of a permanent total disability. Adding to that ten per cent for scoliosis gives a thirty-eight per cent disability. The board added, "in order to be fair with the claimant the board is disposed to throw in an additional seven per cent, and find as a matter of fact that the claimant is now suffering a forty-five per cent total disability."

Up to December 18, 1925, the company had paid claimant $2,525, which was somewhat in excess of the amount fixed in the board's order of June 5, 1925. In addition to that the company had paid, in claimant's behalf, $66 for dental services and $85 for examination "by various doctors." Having determined that a forty-five per cent disability would bring the claimant $2,898, the board ordered the company to pay him $373 in addition to what it had theretofore paid,

and made the further order that if claimant should elect, the Murray Hospital, which was bound by its contract with the company to do so, should furnish him reasonable dental service, and all reasonable and necessary medical, surgical and hospital care required in the amputation of the right limb at a point designed to stop the further spread of the osteomyelitis.

From this order claimant appealed to the district court of Silver Bow county. In his notice he apprised the company that the appeal "is taken upon all the questions of law and fact in the said cause" and further that claimant, upon leave of court, intended to introduce additional evidence and to ask the court to try the cause *de novo*. After the appeal was perfected, claimant's counsel moved the court to try the cause *de novo* and to permit additional evidence to be introduced at the trial of the cause upon the grounds set forth, which were in effect: That the injuries sustained by the claimant were of a nature to cause a total and permanent disability; and the percentage of claimant's "total and permanent disability" is constantly increasing; that due to the effect of the injury upon the health of the claimant, his health was worse and different at the time of the appeal than it was at the time of the hearing before the board, and it would be impossible for the court to determine his physical condition without additional evidence. This motion was supported by claimant's affidavit.

The company objected in writing to the trial of the case *de novo* and to the granting of the motion of the claimant for permission to introduce additional evidence. The court granted the motion and in due time the cause came on for trial. In behalf of the claimant Doctor Donohue and the claimant testified. All of the proceedings and all of the evidence taken before the board was offered in evidence by the claimant and received by the court. Thereupon Doctors Thorkelson and Treacy testified on behalf of the company. Dur-

ing the trial the judge made a personal inspection of the claimant.

The court found that claimant "is of the age of thirty-six years, and for sixteen years prior to the date of the accident worked as a miner, and has no trade or occupation or means of earning a living other than that of a miner or common laborer. That appellant is illiterate and does not have the mental capacity to earn his living in any other manner than that of a miner or common laborer. That the physical condition of the appellant is such as a result of the aforesaid injuries that he is not now and will not be in the future able to work either as a miner or common laborer. That the findings of the Industrial Accident Board are not sustained by the evidence, and are not reasonable under all the circumstances of the case." As a consequence the court "found that the injuries aforesaid have produced a total disability of the appellant, permanent in character." The monetary value of the total disability in this case being $6,400, the court concluded that claimant should be compensated to that extent, less the sum of $2,525, which had been paid. From this judgment the claimant and the company each have appealed.

1. The claimant has moved to dismiss the company's appeal for the reason that its notice of appeal was not served [1] and filed within ninety days from the entry of the judgment. If this motion were sustained it might do away with the claimant's appeal also, for his notice of appeal was served and filed still later. The sword might prove double-edged. But the motion is not tenable. The statute is section 9732, Revised Codes of 1921, which reads in part: "An appeal may be taken: 1. From a final judgment in an action or special proceeding commenced in the court in which the same is rendered within six months after the entry of judgment. 2. From a judgment rendered, on an appeal from an inferior court, within ninety days after the entry of such judgment." The judgment appealed from here is not "on an appeal from an inferior court." Claimant appealed from an award made

by the Industrial Accident Board, which is but a ministerial and administrative body. It has, and must have, in order to discharge its important functions, *quasi*-judicial powers. "It may hear evidence to enable it to make an award in a particular case, and to that end may call witnesses; but it is without power to render an enforceable judgment and its determinations and awards are not enforceable by execution or by other process until a judgment has been entered thereon on appeal to a regularly constituted court." (*Shea* v. *North-Butte Min. Co.*, 55 Mont. 522, 179 Pac. 499, and cases cited.) The motion is overruled.

2. Some contention has arisen as to whether the record and proceedings of the Industrial Accident Board were properly certified—and, consequently as to whether they were entitled [2] to be received in evidence by the trial court—and whether they are properly in the record here. They were received in evidence at the instance of the claimant, who is the only one objecting to the sufficiency of the certificate, and we think his objection should not be entertained. And in view of the condition of the record before us, with particular reference to the stipulations of the parties, it appears to us that a conclusion that would exclude the record of the board from consideration would be hypertechnical. However, if we were to do so, the result in this case would not be different.

3. As to the trial *de novo* and the acceptance of additional evidence: Section 2959, Revised Codes of 1921, provides for [3] an appeal from the decision of the Industrial Accident Board by any party affected thereby "for the purpose of having the lawfulness of the original order, decision, or award, or the order, decision, or award on rehearing inquired into and determined." Section 2960 provides in part: "The court may, upon the hearing, for good cause shown, permit additional evidence to be introduced, but, in the absence of such permission from the court, the cause shall be heard on the record of the board, as certified to the court by it. The trial of the matter shall be *de novo*, and upon such trial the court

shall determine whether or not the board regularly pursued its authority, and whether or not the findings of the board ought to be sustained, and whether or not such findings are reasonable under all the circumstances of the case.''

With respect to these sections the court, in *Shea* v. *North-Butte Min. Co., supra,* made the following comment: ''An appeal may be taken to the district court from any award made by the board, by any persons affected by it. The trial in the district court must be *de novo.* The court may, on good cause shown, permit additional evidence to be introduced; otherwise the hearing must be upon certified record of the proceedings of the board.'' And the court, in *Willis* v. *Pilot Butte Min. Co.,* 58 Mont. 26, 190 Pac. 124, observed that ''the power given to the district court is that of review, rather than a trial anew.''

A further comment upon these opinions may be useful. The trial *de novo* of which the statute speaks is not the familiar trial which takes place upon an appeal from a justice's court to the district court upon questions both of law and fact, for in that case the trial proceeds in the district court as if there had not been a trial in the court below. A trial in the district court upon an appeal from an order, decision or award of the Industrial Accident Board ''shall be heard on the record of the board, as certified to the court by it,'' unless the court, in the exercise of its judicial discretion, shall permit additional evidence to be introduced. If the court does permit additional evidence to be introduced, the trial proceeds upon a consideration of the evidence heard before the board, and that which the court permits in addition thereto.

Terminology here is of little moment. The trial is a re-examination and redetermination in any and every event. If upon the record of the board, the re-examination is in the nature of review but the court must render its own judgment. If the court permits additional evidence to be introduced, the trial proceeds upon a consideration of the evidence heard be-

fore the board, and that which the court permits in addition thereto. To that extent the trial is *de novo*.

The court is given a wide discretion in the matter. Whenever the Compensation Act, or any part or section of it, is interpreted by the court, it shall be liberally construed. (Sec. 2964, Rev. Codes 1921.) Both parties to the action or proceeding shall have the right to appear in the district court and it shall be the duty of the board to appear. If the court shall find upon the trial that "the findings and conclusions of the board are not in accordance with either the facts or the law, or that they ought to be other or different from those made by the board, or that any finding and conclusion, or any order, rule, or requirement of the board is unreasonable, the court shall set aside such finding, conclusion, order, judgment, decree, rule, or requirement of said board, or shall modify or change the same as law and justice shall require, and the court shall also make and enter any finding, conclusion, order or judgment that shall be required, or shall be legal and proper in the premises." (Sec. 2961, Rev. Codes 1921.)

The intention of the law is that the court shall do full and complete justice to all concerned, so far as it may be possible to do so within the limitations of the statute.

4. Questions of first impression in this court are presented upon these appeals. In an attempt to arrive at a correct construction of our statutes we have examined those of every other state in the Union which has a Workmen's Compensation Law, as well as the decisions of the courts bearing thereon. We not only have examined with care the decisions cited by counsel but a great many others. We have not found statutes precisely similar to our own; in fact, ours differs more or less widely from all others. The decisions of other courts have been found helpful. We must, however, ascertain if we can the intent of our legislative assembly from the wording of the various parts of the Act.

"The causes from a historical point of view which impelled the enactment of Workmen's Compensation Laws, and the

[4] object to be served by them," said Mr. Chief Justice Brantly in *Shea* v. *North-Butte Min. Co., supra*, "have heretofore been stated somewhat at length by this court. (*Cunningham* v. *Northwestern Improvement Co.*, 44 Mont. 180, 119 Pac. 554; *Lewis & Clark County* v. *Industrial Acc. Board*, 52 Mont. 6, L. R. A. 1916D, 628, 155 Pac. 268.) It is not necessary to restate them. It is sufficient for present purposes to call to mind that the object sought was to substitute for the imperfect and economically wasteful common-law system by private action by the insured employee for damages for negligent fault on the part of the employer, which, while attended with great delay and waste, compensated those employees only who were able to establish the proximate connection between the fault and the injury, a system by which every employee in a hazardous industry might recover compensation for any injury suffered by him arising out of and during the course of the employment, whether the employer should be at fault or not, except only when the injury should be caused by the wilful act of the employee. In other words, the theory of such legislation is that loss occasioned by reason of injury to the employee shall not be borne by the employee alone—as it was under the common-law system—but directly by the industry itself and indirectly by the public, just as is the deterioration of the buildings, machinery and other appliances necessary to enable the employer to carry on the particular industry. To every thinking person the object sought commends itself not only as wise from an economic standpoint, but also as eminently just and humane."

It has been the constant endeavor of this court, not only in obedience to the statute (sec. 2964, *supra*) but also in view of the rationale of the legislation, to interpret the provisions of the Act liberally with a view to accomplish the result intended, which is "to substitute for an unscientific and burdensome system a system which will make an award in all cases regardless of the cause or manner of the affliction, limited in amount it is true, but commensurate in some degree to the

disability suffered." (*Klippert* v. *Industrial Insurance Department,* 114 Wash. 525, 196 Pac. 17, and cases cited.)

In construing a statute the court must endeavor to give meaning to every word, phrase, sentence and section if it is [5] possible to do so, and will never declare any part of it inoperative if it is reasonably possible to reach any other conclusion. (*City of Billings* v. *Public Service Com.,* 67 Mont. 29, 214 Pac. 608; *State ex rel. Smith* v. *Duncan,* 55 Mont. 376, 177 Pac. 248.)

The statute contemplates the possibility of four resulting conditions from an injury: (1) Temporary total disability (sec. 2912), (2) permanent total disability (sec. 2913), (3) temporary partial disability, (4) permanent partial disability (sec. 2914).

"For an injury producing temporary total disability the employee is entitled to fifty percentum of the wages received at the time of the injury, subject to the maximum compensation of $12.50 per week and a minimum compensation of $6 per week; provided that if at the time of the injury the employee receive wages of less than $6 per week, he shall receive the full amount of such wages per week. Such compensation shall be paid during the period of disability and not, however, in any event, exceeding 300 weeks." (Sec. 2912.)

For an injury producing total disability, permanent in character, the employee is entitled to receive the same compensation as is provided for in section 2912, but "such compensation shall be paid during the period of disability not exceeding four hundred weeks, after which time payment shall continue during disability at the rate of five dollars per week." (2913.)

Respective counsel, the board and the trial court seem to regard section 2914 as inapplicable to claimant's case, and we shall adopt that theory, but without expressing an opinion as to the accuracy of that view of the law.

Section 2917, Revised Codes of 1921, provides that during the first two weeks after the happening of an injury the employee is entitled to reasonable medical and hospital services

and medicines as and when needed, in an amount not to exceed one hundred per cent in value, except as is otherwise provided in the Act.

"No compensation shall be allowed or paid during the first two weeks of any injury except as may be required by the provisions of the preceding section, but if disability continue six weeks, compensation shall be paid from date of injury." (Sec. 2918.)

Section 2919, which was in effect at the time the claimant was injured, provides in part that "compensation for all [6] classes of injuries shall run consecutively and not concurrently, and as follows: First, the two weeks' medical and hospital services and medicines as provided in section 2917, unless the employee is a contributor to a hospital fund as otherwise in this Act provided; after the first two weeks, compensation as provided in sections 2912, 2913 or 1914; following any or either, or none of the above, if death results from the accident within six months of the date of the injury, burial expenses as provided in section 2916"; following which it is provided that compensation shall be paid to various beneficiaries.

Section 2919, as amended by Chapter 121 of the 1925 Session Laws, page 210, reads in part as follows: "Compensation other than medical, surgical and hospital and burial benefits provided, shall run consecutively and not concurrently and payment shall not be made for two classes of disability over the same period.  *  *  *  "

The "classes" mentioned in section 2919 as originally enacted and as amended evidently refer to the four disabilities mentioned in sections 2912, 2913 and 2914. (*Mack* v. *Legeal,* 144 La. 1017, 81 South. 694.)

The compensation shall run consecutively,—successively, the payments succeeding one another in regular order. (2919.) First, the two weeks' medical and hospital services, next, "compensation as provided in 2912, 2913 or 2914." We do not regard the amendment of section 2919 as announcing a

new policy, but rather as clarifying the original Act. The amendatory provision reiterates that the compensation shall run consecutively and not concurrently and then specifies that "payment shall not be made for two classes of disability over the same period." If payment may not be made for two classes of disability why add the words "over the same period?" Sections 2912 and 2913 relate to total disability, the first to a temporary, the second to a permanent condition. The first may be ended by a recovery, complete or partial, or it may lapse into permanent total disability.

The period of temporary total disability is that temporary period immediately after the accident during which the in-[7] jured employee is totally incapacitated for work by reason of the illness attending the injury. (*Mt. Olive Coal Co.* v. *Industrial Com.*, 295 Ill. 429, 129 N. E. 103.) During that period the law authorizes the award of compensation while medical and surgical skill is attempting, so far as it may, to restore the injured workman. The result in the beginning may be problematical. If complete recovery attends the patient compensation ceases. Under section 2912 it may never continue longer than 300 weeks. If the total disability proves not temporary but permanent, payment is governed by section 2913; it was in fact a permanent condition, not a temporary one. There is no concurrent condition here, nor any double payment over the same period. The compensation is paid during the period of disability,—the period of total disability, —which shall not exceed 400 weeks, and after that at the rate of five dollars per week.

If a man who has a broken leg is confined to his bed for a period of two months, during that time he is temporarily totally disabled. If the leg is so badly injured that a good recovery never ensues, or if complications from the injury set in so that he never makes a good recovery, he then has a permanent partial disability. The period of total disability has ceased and a period of partial disability has succeeded. Here are two classes of disabilities, one succeeding the other.

When the total disability ends, and the extent of the partial disability, are questions of fact, to be decided in the first instance by the Industrial Accident Board.

Many states have a section similar to section 2912. The courts refer to the temporary period of total disability as a healing period. We think the characterization apt, and in view of the language of our statute as a whole conclude that it is applicable to our situation. It follows that the injured workman is entitled to payment while disabled temporarily, following which, if he is partially disabled, he is also entitled to the compensation provided for in such a case within the limitations prescribed.

We come now to a consideration of section 2920 upon which counsel have spent much effort. The section provides that [8] in case of injuries which are specified "the compensation in lieu of any other compensation provided by this Act, other than that provided in section 2917, unless the employee is a contributor to a hospital fund as otherwise in this Act provided, shall be fifty per cent of the wages received at the time of the injury, subject to the maximum compensation of twelve dollars and fifty cents per week and a minimum compensation of six dollars per week; provided that if at the time of the injury the employee receives wages of less than six dollars per week, then he shall receive the full amount of such wages per week and shall be paid for the following periods: For the loss of," and then follow numerous instances respecting the loss of a member of the body, for example—"one leg between the knee and ankle, one hundred forty weeks." The section ends: "The loss of both hands, or both arms, or both feet, or both legs, or both eyes, or any two thereof, in the absence of conclusive proof to the contrary, shall constitute total disability, permanent in character."

This section embraces only such injuries as result in the *loss* of a member, or members, of the body, and the compensation is "in lieu of any other compensation provided by this

Act, other than that provided in section 2917.'' When is the compensation payable, and to what particular period of time does it refer? The statute does not specify. Manifestly it must be when the loss of the member occurs. The compensation is in lieu of any other compensation except that provided in 2917. Compensation for what? Manifestly, the loss, and for that the compensation provided is exclusive. There can be no further compensation awarded to the workman for disability on that account. The loss of the member may take place when the accident occurs; or amputation may become necessary immediately. In such case it is known at once that the ultimate result of the injury will be the loss of the member. Section 2920 controls that case. If the workman sustains an injury which results in his temporary total disability, but of such a character that the extent of the disability cannot be determined, he is entitled to receive compensation under section 2912, within the limitations of that section until he recovers, or it is determined whether his disabilty is total or partial. This construction of the statute is in harmony with the spirit of the Act and reconciles the statutes. The courts of other states, having statutes not greatly dissimilar to our own, have reached the same conclusion. (See *Poast* v. *Omaha Merchants' Express etc. Co.,* 107 Neb. 516, 186 N. W. 540.)

In *Addison* v. *W. E. Wood Co.,* 207 Mich. 319, 174 N. W. 149, the employee had sustained an injury to his leg resulting in total incapacity for about a year, when his foot was amputated. The supreme court of Michigan said that the employee's condition before amputation of his foot entitled him to weekly compensation from the date of his injury as for a continuing total incapacity. Upon the amputation of his foot the employee's indeterminate incapacity, therefore cognizable only under the total incapacity section, took definite classification under the section which is devoted to partial incapacity and specified compensation for loss of mem-

bers. (*Curtis* v. *Hayes Wheel Co.,* 211 Mich. 260, 178 N. W. 675.)

In *Franko* v. *Schollhorn Co.,* 93 Conn. 13, 104 Atl. 485, the court said: "The argument of the respondent relies, to a large extent, upon that part of section 11 which provides that the compensation for the named injuries shall be 'in lieu of all other payments.' This refers to payments for the named injuries. As to these the compensation is exclusive. But this does not limit the award to any one of the compensations provided for the named injuries; nor does it purport to be in lieu of payments made for injuries resulting in partial incapacity not among these named injuries. And since these are a distinct class of injuries resulting in partial incapacity, the compensation provided for these specific injuries cannot and does not cover them. It is exclusive of any other payment by way of compensation for the injuries specifically designated." (And see *Aetna Life Ins. Co.* v. *Industrial Com.,* 64 Utah, 230, 228 Pac. 1081; *Crawford* v. *Virginia Iron, Coal & Coke Co.,* 136 Va. 266, 118 S. E. 229; *In re Denton,* 65 Ind. App. 426, 117 N. E. 520; *Gobble* v. *Clinch Valley Lumber Co.,* 141 Va. 303, 127 S. E. 175.)

Compensation for permanent partial disability and also for
[9] specific loss of use of a member of the body cannot be awarded where both result from the same injury. (*Slago Coal Co.* v. *Industrial Com.,* 293 Ill. 271, 127 N. E. 751.)

Counsel for the company insist that the district court erred in overruling the findings of fact of the Industrial Accident Board, and in finding claimant's injury amounts to a total disability permanent in character. With this we agree. The additional evidence received by the court was no stronger for the claimant than that which he produced before the board. It can scarcely be said to have been new evidence; it was repetition merely. The fact that the trial judge made a personal examination of the claimant is called to our attention. It was an ocular examination by a layman. That his conclusions from what he saw are to be considered in opposition to

the testimony of the surgeons cannot be admitted. There was little conflict between the surgeons who testified. The findings of the board as to claimant's physical condition are sustained by the preponderance of the evidence. If nothing more were required we should not hesitate to affirm the action of the board under the doctrine of *Morgan* v. *Butte Central Mining & Milling Co.,* 58 Mont. 633, 194 Pac. 496, and *Willis* v. *Pilot Butte Mining Co., supra.*

Complainant's main disability rests upon the condition of his right ankle and leg. His spinal curvature resulted from the condition of the leg and that may be alleviated if not cured completely by taking the proper steps. The condition of his jaw does not disable the claimant. If he will submit to the extraction of his teeth and subsequent treatment the pyorrhoea will disappear. The post operative hernia is not a grave matter.

Notwithstanding the fact that the osteomyelitis in his leg will continue, eventually causing the loss of his leg, and possibly his life, claimant always has stubbornly refused to submit to amputation, although little danger is to be apprehended from the operation. Dr. Kistler advised the operation before claimant left the Murray Hospital. The renowned surgeons at the Mayo Hospital advised it. Dr. Donohue has advised it. We think if the company had asked to be relieved from paying compensation on account of injury to the leg when claimant left the Murray Hospital, or at the latest when he left the Mayo institution, the board would have been warranted in ordering a suspension of payments until claimant submitted to the operation. The board could not order claimant to submit to amputation of the leg, but it could absolve the company from making the payments during the period of claimant's obstinate and unreasonable refusal to submit to the operation advised by the surgeons in this case.

As was said in a celebrated case: "There is, of course, no question of compelling the party to submit to an operation. The question is whether a party who declines to undergo

what would be described by experts as a reasonable and safe operation is to be considered as a sufferer from the effect of an injury received in the course of his employment, or whether his suffering and consequent inability to work at his trade ought not to be attributed to his voluntary action in declining to avail himself of reasonable surgical treatment. * * * If the operation is not attended with danger to life or health, or extraordinary suffering, and if according to the best medical or surgical opinion the operation offers a reasonable prospect of restoration or relief from the incapacity from which the workman is suffering, then he must either submit to the operation or release his employers from the obligation to maintain him." (*Donnelly* v. *Baird & Co.*, 1 B. W. C. C. 95. And see *O'Brien* v. *Albrecht Co.*, 206 Mich. 101, 6 A. L. R. 1257, 172 N. W. 601; *Chicago Bridge & Iron Works* v. *Sabin*, 105 Okl. 62, 231 Pac. 851; *Dickson Construction & Repair Co.* v. *Beasley*, 146 Md. 568, 126 Atl. 907; *Walsh* v. *Locke & Co.*, 6 N. C. C. A. 675, and notes; Schneider on the Law of Workmen's Compensation, sec. 496.)

In *Kricinovich* v. *Foundry Co.*, 192 Mich. 691, 159 N. W. 362, the court said: "Before the defendant is to be charged, in law or morals, with the duty to compensate him, the claimant should first discharge the primary duty owing to himself and society to make use of every available and reasonable means to make himself whole."

Let it be assumed that claimant was entitled to compensation for temporary total disability while he remained in the Murray Hospital. Upon that basis he was entitled to be paid for eight months, or thirty-five weeks, at $12.50 per week, or $437.50. If he had then submitted to an amputation of his leg he would have been entitled to $1,750 and also to such compensation as his partial disabilities, aside from his leg, amounted to. But he did not choose to submit to the operation; he chose to be rated as a partial disability, and upon that rating has accepted payment for 202 weeks, or $2,525 in the

aggregate. Having chosen that course he will not be permitted, in case he shall now submit to the operation, to demand the additional amount for the loss of his leg. If he shall submit to the operation, in fairness he must suffer the deduction of $1,750 from the amount which has been paid him. He will not be permitted to penalize the company through his own fault.

Because the disability in this case was based upon other injuries in addition to the injury to the leg, the board figured the compensation at forty-five per cent of the amount payable for a total disability permanent in character. Neither side to the controversy objects to this method of fixing the compensation and we shall not raise any objection to it. In this proceeding we are not called upon to decide whether the method is correct. The objection to the court's action on part of the appellant company is that the court found the claimant to be totally disabled, and on the part of the claimant that the court deducted from the award the amount already paid.

The court fell into error in declaring the claimant is totally [11] disabled. It may be true that he will not be able to resume his occupation as a miner. But our statute does not base disability, or incapacity to work, synonymous terms under the Compensation Law, upon impairment of one's earning capacity in the employment in which he was engaged at the time of the accident. The general rule is that disability cannot be found to be total where it appears that the claimant's earning power is not wholly destroyed and that he is still capable of performing remunerative employment. In such case he is under obligation of making active effort to procure such work as he can still perform. (28 R. C. L. 820.)

In *Roller* v. *Warren*, 98 Vt. 514, 129 Atl. 170, we find the following: "The Texas court has stated the rule thus: Total incapacity for work does not imply an absolute disability to perform any kind of labor, but a person disqualified from performing the usual tasks of a workman in such a way as to

enable him to procure and retain employment is ordinarily regarded as totally incapacitated. *Home Life & Acc. Co.* v. *Corsey* (Tex. Civ. App.), 216 S. W. 464; *Bishop* v. *Underwriters* (Tex. Civ. App.), 254 S. W. 411. *Moore* v. *Peet Bros. Mfg. Co.*, 99 Kan. 443, 162 Pac. 295, is to the same effect. It is pointed out in *Connelly's Case*, 122 Me. 289, 119 Atl. 664, that the test is not whether the injured employee is totally incapacitated from performing the same kind of labor as he was performing at the time of his injury. It is said that the Act provides compensation for the total or partial 'incapacity for work'— the loss of earning power—and that in determining whether total disability to perform work still exists the commissioner should consider whether the injured employee is capable of performing any kind of available work." (And see *Georgia Casualty Co.* v. *Ginn* (Tex. Civ. App.), 272 S. W. 601; *Integrity Mutual Gas Co.* v. *Garrett*, 100 Okl. 185, 229 Pac. 282; *Lumbermen's Reciprocal Assn.* v. *Wells* (Tex. Civ. App.), 283 S. W. 208; *Mt. Olive & Staunton Coal Co.* v. *Industrial Accident Com.*, 320 Ill. 618, 151 N. E. 588.)

One who alleges that he is totally incapacitated from obtaining remunerative employment has the burden of proving it by satisfactory evidence. The claimant in this case has not discharged that burden. The preponderance of the testimony is against the trial court's finding upon that issue. After a comparison of all the evidence we conclude the board was liberal in fixing claimant's total incapacity at forty-five per cent. While the company might have been warranted in objecting to that rating it has not done so. Upon the basis that claimant's disability is total and permanent the court found the amount of his compensation to be $6,400, less what had been paid. Except as to the deduction the finding is not questioned. Taking this amount as substantially correct and accepting the percentage of disability as fixed by the board, we find claimant entitled to forty-five per cent of $6,400, or $2,880, in addition to the amount paid him while he was temporarily disabled.

Claimant was in the Murray Hospital for eight months, or say, thirty-five weeks. The preponderance of the testimony on the subject is to the effect that if the leg had been amputated a considerable portion of his present disability would not exist. If it had been taken off while he was in the Murray Hospital it is likely he would not now be affected with scoliosis. Certainly if he had submitted to the course advised by the surgeons his incapacity would be but partial. In view of these facts, substantial justice demands that his period of temporary total disability be deemed ended when he left the Murray Hospital, or eight months following the injury. Notwithstanding that he has contributed to the extent of his disability, we are disposed to accept the rating given him by the Industrial Accident Board and to confirm the finding and decision of the board.

The cause will be remanded to the district court of Silver Bow county, with directions to modify the judgment as follows: Claimant shall be entitled to recover from the company the sum of $437.50 for the period during which he was rated as a total temporary disability, plus the sum of $2,880, being forty-five per cent of $6,400, from which shall be deducted the sum of $2,525 paid by the company to the claimant prior to December 18, 1925, and any other sums which the company has paid to him since that date. If the claimant shall elect within sixty days after the *remittitur* in this case shall be filed in the district court, the Murray Hospital shall furnish him "such reasonable dental service and attention as has been made necessary by virtue of his injury or by virtue of conditions arising out of his employment with the defendant company," and afford to him such reasonable and necessary medical, surgical and hospital attention as may be required in the amputation of his right leg at a point designed to stop the further spread of osteomyelitis, in accordance with the finding and decision of the board. Each party shall pay one-half the costs on this appeal.

[78 Mont. 579.]

The judgment is reversed and the cause is remanded for further proceedings in accordance with the directions above set forth.

*Reversed and remanded.*

ASSOCIATE JUSTICES MYERS, STARK, MATTHEWS and GALEN concur.