**HAMILTON & HARTMAN et al. v.
BADGETT et al.**

No. 24191.   Opinion Filed May 23, 1933.

Pierce, Follens & Rucker, for petitioner.

Bond, Hatcher & Bond, for respondents.

McNEILL, J.   This is an original action to review the proceedings and an award of the State Industrial Commission.

On May 28, 1927, the respondent Jesse W. Badgett, while in the course of his employment in drilling an oil and gas well, sustained an accidental personal injury by being struck on the right side of his head and jaw, causing a concussion and injury to the brain, producing a blood clot or oedemic condition; injury to his eyes and vision, as result of a brake or lever flying and hitting him as a drill stem was being lowered in the hole of the well. Respondent was immediately removed to a hospital at Chickasha, and was placed under the care of a doctor. He remained in the hospital for about nine days, during which time he was unconscious for several days.

Liability was acknowledged, and voluntary compensation payments were made by the employer's insurance carrier, commencing June 3, 1927, five days after the injury, and were continued until June 14, 1928. On June 25, 1928, the insurance carrier notified the Commission that payments had been stopped, and requested the Commission to set the matter down for hearing and to request respondent to establish his right to further payments of compensation. After a hearing, the Commission, on November 30, 1928, issued its order holding that the evidence was insufficient to show that respondent suffered any disability beyond June 14, 1928. On December 10, 1928, respondent filed his motion for rehearing.

On December 26, 1928, the Commission granted a rehearing and vacated its order of November 30, 1928. Further testimony was taken before the Commission on February 4, 1929, and on March 26, 1929, the Commission found that the respondent "has been temporarily totally disabled from performing ordinary manual and mechanical labor since the date of the injury to February 4, 1929, and is still so disabled; that any permanent disability claimant may have by reason of said accident can be more definitely determined at some future date." The order also provided that the petitioners pay the rspondent compensation from May 28, 1927, to February 4, 1929, less the five-day waiting period and less any sum theretofore paid and to continue compensation at the rate of $18 per week until further ordered by the Commission. No appeal was taken from this order, and petitioners resumed payments under this order until June 25, 1931. On August 6, 1931, petitioners filed with the Commission an application for a hearing to determine extent of disability, setting forth that respondent had recovered from temporary disability, and that although the Commission had made no determination of any permanent partial disability, they had fully paid for all temporary and permanent disability

32

which respondent may have sustained. The application, in part, is as follows:

"Comes now respondent and insurance carrier, and respectfully represent and show that the claimant in this case was injured on May 28, 1927; that compensation has been paid in compliance with orders of the State Industrial Commission for a period of 212 weeks at the rate of $18 per week; that such temporary disability as the claimant may have had following said injury terminated within a few months after the happening of said accident, and that there has been no determination of permanent disability sustained by the claimant because of said accident; that the respondent and insurance carrier allege by the payment of compensation for a period of 212 weeks, they have fully complied with their obligations under the Workmen's Compensation Law, and the claimant has been fully compensated under the provisions of said law for all temporary and permanent disability which he may have sustained by reason of said accident.

"Wherefore, your movants pray that this cause be set down for hearing; that an order be entered herein approving the compensation which have heretofore been made by your movants, and dismissing your movants from any further liability in this cause."

On August 27, 1931, the respondent filed an answer to this motion wherein he denied that he had been fully compensated for anything more than temporary total disability, and alleged that he had not received any compensation since June 25, 1931; that the Commission had granted him temporary total disability and that the order of March 26, 1929, had not been vacated; that the permanency of his disability was to be determined by the Commission at some future date; that he had filed his motion in November, 1929, setting forth that he was permanently and totally disabled; that no response had been filed thereto, and that he requested in said motion that the Commission determine the extent of permanent disability.

Thereafter various hearings were conducted by the Commission, and on September 27, 1932, the Commission entered its order and award, which petitioners seek to review, and which in part is as follows:

"(3) That thereafter, to wit, on March 26, 1929, this Commission issued its order granting the claimant a temporary continuing order at $18 per week compensation, and under which the respondent and its insurance carrier have paid the claimant for 212 weeks at the said rate of $18 per week, or the total sum of $3,816, for the period of time from June 3, 1927, being five days after the accident, until July 7, 1931, or for four years and four weeks beyond the 5-days waiting period, and that on August 6, 1931, the respondent filed a motion herein for the suspension of said payments as of July 7, 1931;

"(4) That as a further and direct result of said accident and injury, the claimant did, on to wit, July 7, 1931, suffer a material change in his condition in that his injuries from said accident became permanent in quality and character and the temporary character of said injuries was ended. * * *

"(6) That on, from and continually after July 7, 1931, and, as the result of said accident, the claimant became, remained, and is permanently and partially disabled and was, remained, and is able to earn the sum of $4 per day, thus reducing his wage-earning capacity from that at the time of the said injury in the sum of $6 a day, difference, and a compensation basis fixed upon the difference of $6 per day remains at $18 per week, for which claimant is entitled to recover for not exceeding 288 weeks, which 288 weeks, together with the 212 weeks heretofore paid claimant for his temporary total disability, would be a total of 500 weeks, the total number of weeks allowed compensation under the law."

Petitioners urge many contentions: That the order of the Industrial Commission made on September 27, 1932, is contrary to law; that they are required by said order to pay compensation for a period of 500 weeks, which is the statutory requirement for permanent total disability, when the order finds that the disability is not total but partial; that the evidence offered by petitioners was to the effect that respondent was entirely recovered, while the evidence of respondent showed that respondent was permanently totally disabled; that the Commission found that the respondent's disability was permanent partial; that for permanent partial disability the Commission may award compensation for a period of 300 weeks commencing at the end of temporary total disability; that by styling the 212 weeks which had been paid by petitioners as temporary total disability payments, the 300 weeks' limitation fixed in the statute was done away with, and the respondent awarded as much compensation as if he were permanently totally incapacitated from performing any kind of work, although in said order the Commission found that respondent had an earning capacity of $4 per day; that if the order of March 26, 1929, be construed as an order requiring payment of compensation for temporary total disability, and an adjudication that the disability existing at that time was a temporary total disability, then

the award of September 27, 1932, was illegal for the reason that the Industrial Commission may not reopen its prior award unless there be proved and established a change of condition; and that there was an entire absence of proof of a change of condition.

It is also urged by petitioners that the Commission, in its order of March 26, 1929, by reason of the conflicting views of the medical expert testimony, three doctors testifying respondent had no disability, four that he was permanently disabled, and two undecided as to whether the disability was temporary or permanent, made a temporary continuing order, and that such order made no adjudication of an exact classification of the existing disability of respondent. It is then asserted that if such order of March 26, 1929, be construed to be a temporary continuing order, then it is obvious that such order and award is justified only if respondent was actually temporarily disabled until July 7, 1931, and that on such date a change of condition occurred, whereby his injuries became permanent instead of temporary and partial instead of total.

Petitioners concede that the Commission could justifiably find from the evidence that respondent's injuries had resulted in permanent partial disability, falling under the classification of "other cases" under subdivision 3 of section 7290, C. O. S. 1921 [O. S. 1931, sec. 13356], but in this connection urge that such compensation is limited to 300 weeks period for permanent partial dismanent partial disability; that in this case the Commission had no authority under the evidence to start the running of the 300 weeks period for permanent partial disability at July 7, 1931, by simply styling the payment theretofore paid by petitioners as temporary total disability payments.

Petitioners, in conceding that there is evidence to support a finding that the disability is permanent partial, assert it as their theory that the evidence supports a finding that the permanent partial disability commenced three weeks or, at the most, not to exceed five months from the date of the accident, and if they are liable for compensation for permanent partial disability for a period of 300 weeks, they should have credit for the previous payments made which they paid voluntarily or by the continuing order of the Commission entered March 26, 1929, for a total period of 212 weeks previous to July 7, 1931, being the date the Commission found that payments for permanent partial disability should commence.

The record is voluminous, with many hearings, and includes the testimony of many doctors. The injury received by respondent appears to have been of a severe nature, slowly manifesting limitations and doubts as to a recovery. No complaint seems to be registered by petitioners as to the payments which were made voluntarily by them, nor as to the payments actually made under the order of March 26, 1929, until June 25, 1931, at which time petitioners ceased making payments and filed their motion on August 6, 1931, for a hearing to determine extent of disability of respondent and praying that petitioners be relieved from any further liability by reason of the payment of compensation for a period of 212 weeks for all temporary and permanent disability sustained by respondent by virtue of said accident. The medical expert testimony is conflicting.

Doctor Roy Emanuel testified at the first hearing on November 26, 1928, that he had treated respondent promptly after the accident. He described his injury and condition; that he had examined him from time to time since he was discharged from the hospital; and that respondent had reported to him at intervals during a period of five months. He testified, in part:

"Q. Doctor, in a case like this, if the treatment of the patient, that is, response to treatment, it develops normally, the patient should recover in about five months? A. That is simply a date we have to assume as giving sufficient time for head injuries to recover, there is no specific date that could be set for any recovery of any serious injury to the head."

He also testified that his condition might be temporary or permanent. Dr. W. T. Salmon, a doctor specializing in eye, ear, nose, and throat, and of many years experience, was asked at the hearing of February 4, 1929, in reference as to whether the disability was temporary or permanent, as follows:

"Q. Doctor, would you say that Badgett's condition at the present time or his disability is temporary or permanent? A. That would be a question that is hard to answer except basing it on my opinion or the experience of the past that I have had with a similar case, if this would be a blood clot, it might be absorbed, if it be from an edemative condition where there is any nervous connective tissue established for an indefinite period, he is liable to have these symptoms and neurosis showing for an indefinite time. * * * Q. Doctor, is it possible from a medical standpoint to cure this condition from which Mr. Badgett is suffering from? A. Some have been cured,

some have gotten over this condition, but it is never possible to say when you start to treat any case of that nature, sometimes quiet does the work more than treatment would do. * * * Q. If the evidence in this case should show that the condition has improved would you say that it was unlikely or was likely that it would continue to improve? A. That is something nobody could be definite about. I should think it would be a long time, but I don't know. * * * Q. Is it your opinion this man has a blood clot or edema, which of the two in your opinion has he? A. I would say from the symptoms that he has now for so long it must have been edema, it might have been both, Judge, no one could say."

The Commission, after a hearing, entered its order on March 26, 1929, in part, as follows:

"2. That by reason of said accidental injury the claimant sustained a severe injury to his jaw and teeth, also to the head and back of ear, and to the right eye: by being struck by a brake lever, rendering him unconscious for a period of seven days; that claimant has been temporarily totally disabled from performing ordinary manual and mechanical labor since the date of the injury to February 4, 1929, and is still so disabled; that any permanent disability claimant may have by reason of said accident can be more definitely determined at some future date."

The Commission also found that respondent was entitled to compensation at the rate of $18 per week from May 28. 1927, to February 4, 1929, less the five-day waiting period and less any sum or sums theretofore paid, and ordered petitioners to continue payments of compensation at the rate of $18 per week to respondent until further order of the Commission. Under date of April 8, 1929, the insurance carrier filed a "notice of payments resumed," commencing on April 5, 1929. It is apparent that the Commission did not close the case as to temporary total disability by its order of March 26, 1929, and petitioners made payments in full compliance with said order until, as aforesaid stated, June 25, 1931. No proceedings were taken to review this order. At the hearing on January 26, 1932, on the application of petitioners to determine extent of disability and their contention that respondent had been fully compensated for all temporary and permanent disability which respondent had sustained by reason of the accident, Dr. Salmon, who testified at the former hearing, testified that the disability of respondent was permanent. There was other medical testimony that his condition had a progressive mental deterioration of the brain which was causing the beginning of the softening of the brain, and that this condition was permanent and progressively for the worse. After an apparently full presentation of medical testimony on behalf of respondent and petitioners, the Commission entered its award of September 27, 1932.

The Commission, by its order of September 27, 1932, found that the respondent was entitled to temporary total disability until July 7, 1931, and that on said date the respondent became, remained, and was permanently and partially disabled, and by reason thereof found that said respondent was entitled to compensation for permanent partial disability for a period not to exceed 288 weeks from July 7, 1931. This order specifically provided that the 212 weeks theretofore paid respondent for temporary total disability, when added to the 288 weeks allowed for permanent partial disability, would be a total of 500 weeks, the total number of weeks allowable for compensation under the law for the injury in question. Even though the disability was found by the Commission to be permanent partial from July 7, 1931, instead of permanent total, no prejudice resulted thereby to petitioners.

Petitioners stress the fact that the order and award of March 26, 1929, made no exact classification of the existing disability of respondent in reference to the future payments. We do not think that there should be confusion about this order. It plainly informs petitioners that they were required to make compensation to respondent for temporary total disability and to continue to make such payments until the further order of the court. The order specifically found that on March 26, 1929, respondent "has been temporarily totally disabled from performing ordinary manual and mechanical labor since the date of the injury on February 24, 1929, and is still so disabled." Petitioners were required to make payments under said order until the further order of the court. Such payments to be made until the further order of the court could be construed in no other light than payments for temporary total disability. If there was lack of definiteness, certainty, or sufficient preciseness respecting said order, petitioners were privileged at all times to appear before the Commission to present evidence to challenge the right of respondent to receive these continuing payments for compensation. They could have requested the Commission to make full, clear, and specific findings on the question of these

payments. Petitioners took no issue on these questions and made no such contentions before the Commission. They were apparently content and satisfied· that the order of March 26, 1929, was sustainable under the record, otherwise a review or appeal would have been perfected. By continuing to make the payments after the order of March 26, 1929, without protest and without a review or appeal from said order, we conclude that such payments were properly applied as payments for temporary total disability. The burden to show that the circumstances had become altered, and that the order should have been reviewed because it was wrong, was upon petitioners. This task was not put upon respondent.

Considering the severe injury which the employee received to his head in the instant case, and the attendant circumstances following this injury, it appears that it was apparent to all of the parties, including the Commission, that temporary total disability was bound to result for some considerable period of time.

The question of determining just when temporary total disability ceases and permanent partial, or permanent total disability, or both, may succeed as a result of the original injury, are questions of fact to be determined by the Commission, and often are not free from difficulty.

When an employee sustains a compensable injury which results in temporary total disability, he is entitled to receive compensation for temporary total disability during the time he is suffering from such temporary total disability, and it often occurs that in such matters the Commission cannot determine or foretell with certainty just when temporary total disability will cease, or whether the injured employee will be restored to complete normalcy. Poast v. v. Omaha Merchants Express & Transfer Co. (Neb.) 186 N. W. 540. Each case presents different facts. To determine when temporary total disability may cease and when or whether permanent partial or permanent total disability will succeed, frequently calls for expert medical testimony in connection with all the facts and circumstances in the case. This expert evidence sometimes and very often does vary with the individual doctors.

If an injured employee sustains a compensable injury which results in temporary total disability, and. if at the time of the hearing to determine the extent of such disability the injury is of such a nature and character that the extent of such disability cannot then be determined, then the Commission is authorized to award such employee compensation for temporary total disability under the schedule of compensation provided for in section 7290, C. O. S. 1921, not in excess of 300 weeks during the continuance of such temporary total disability, or until such time arrives within said period of limitation when it can be ascertained or determined that such temporary total disability has ended or ceased. See Dosen v. East Butte Copper Mining Co. (Mont.) 254 P. 880.

When there has been a previous order and award for temporary total disability, it is not necessary for the employee to allege and prove a change of condition to entitle him to· an additional award for permanent partial disability, or permanent total disability, attributable to the original injury, if he can establish such facts by competent evidence to the satisfaction of the Commission. Dailey, Crawford & Pevetoe v. Rand, 155 Okla. 229, 8 P. (2d) 738; Geis Price Grain Co. v. Bailey, 155 Okla. 302, 9 P. (2d) 424; Magnolia Petroleum Co. v. Nalley, 156 Okla. 156, 10 P. (2d) 249; Loffland Bros. Drilling Co. v. State Industrial Commission, 157 Okla. 78, 10 P. (2d) 1096.

Even though these questions of disability are difficult of determination, nevertheless it is the statutory duty of the Commissioners to determine the existence of such disability as a question of fact, from the facts and circumstances presented by the record.

In the instant case, the Commission determined by its order, which petitioners seek to review, that the permanent partial disability commenced on July 7, 1931. There is competent evidence to support this finding. In fact, there is competent evidence that the disability had become permanent total instead of permanent partial. Applying the canon of construction, supported by many previous decisions of this court, that the finding of facts by the State Industrial Commission is conclusive upon this court, and will not be reviewed where there is any competent evidence reasonably tending to support the same, we conclude, after a review of the contentions urged by petitioners, that there is ample competent evidence to maintain the award of the Commission. The Commission correctly followed the rule announced in the case of Magnolia

Petroleum Co. v. Allred, 160 Okla. 126, 16 P. (2d) 78.

We find no prejudicial error. Award affirmed.

RILEY. C. J., CULLISON. V. C. J., and SWINDALL, OSBORN, BAYLESS. BUSBY. and WELCH, JJ., concur. ANDREWS, J., absent.